Hon. Jefferson P. Kidder, }
Hon. Alanson H. Barnes, } Associate Justices.

## Fraley v. Bentley, et al.

1. *MISJOINDER OF ACTIONS:* objection, how taken. Objections on the ground of misjoinder of actions, should be taken by demurrer, motion to strike out, or motion to compel plaintiff to elect upon which cause of action he would proceed.

2. ———: ———: waiver of objections. The objection is waived by taking issue upon plaintiff's petition, and such waiver extends to all defects in the firs pleading, except such as are of a jurisdictional character, and that the com plaint or petition does not state facts sufficient to constitute a cause of action

3. ———: ———: stipulation by waiver. Such waiver is to be taken as a stipulation or agreement that defendant is content with the plaintiff's pleadings, and takes issue upon them as presented.

4. *EVIDENCE:* depositions. Defendant, by waiving objections to the blending of equitable and legal proceedings in one action, thereby consents that evidence may be received in any of the modes applicable, and the cause may be heard on depositions.

*5. DEED:* CONSIDERATION. The recitals in a deed as to the consideration, are not conclusive, but the true and actual consideration may be shown by proof *aliunde.*

*6. CONTRACT:* BREACH: MEASURE OF DAMAGES. F sold and conveyed to A and B, a certain parcel or tract of timber land, for the consideration of four hundred dollars expressed in the deed, and the further consideration of one hundred dollars to be paid in lumber; and that the said A and B would erect on said land, within a certain stated time, a good steam saw-mill. A and B failed to erect the mill as stipulated. *Held:* That the benefit to be derived by F was the difference between the price actually paid, and the value of the land, that being the amount paid by F for the promise of A and B to erect the mill.

## Appeal from Yankton County District Court.

THE first pleading on part of plaintiff purports to be a petition for specific performance and damages. The petitioner alleges, that on or about the 4th day of November, 1865, he sold and conveyed to defendants a certain tract of timber land, for the consideration of $400, cash down; and, further, that defendants were thereafter, to-wit: in the spring of 1866, to erect and have completed on said land a steam saw-mill, and deliver to plaintiff good sawed lumber to the amount in value of $100—"making in lumber and money $500, and the erection and construction and completion of said steam saw-mill. These, altogether united, constituted the consideration for the sale of said tract of timber land, united likewise with the further consideration and fact which formed a large and controlling inducement in the sale and disposition of said tract of land, that petitioner then owned 160 acres of land and a number of town lots in the immediate vicinity of said tract so sold, the value of which would have been greatly enhanced in value by the erection and completion of said mill."

Defendants failed and refused to erect the mill, or to furnish the lumber as stipulated, and plaintiff prays a decree for specific performance of said contract, and for $500 damages. A supplemental petition was filed, asking that a writ of injunction issue, restraining defendants from cutting timber on said land, which was allowed.

Defendants answering admit the purchase of the land, and the execution of the deed, a copy of which they set out, allege that the only consideration for the same was $400 as expressed

in the deed, and that was all that was ever agreed to be paid.

They further allege that plaintiff received from Walter A. Burleigh, improvements, in the town of Bon Homme, of the value of $100 as a further consideration for the sale of said land to defendants. And they " expressly deny all matters set up in plaintiff's petition and supplemental petition, except what is admitted."

The cause was tried to the court on depositions, and a judgment rendered in favor of plaintiff for the sum of $500 and costs. From this judgment, defendants appeal.

*Moody & Hand*, for appellants.

Neither the petition nor the proofs in this case, show any cause of action against the defendants below, (the plaintiffs in error here.) The petition and amended petition set out a contract by defendants, to erect upon their own land, a steam saw-mill. *Not to erect and maintain one.*

The proofs show that the contract, if one was made, was a verbal one, and was a part of the contract to sell and convey the lands to defendants by the plaintiff, and was a condition of such sale. Such contract, if one existed, was merged in the deed, and parol proof thereof was wholly incompetent and improper.

This is in no sense like a case, where a different consideration from that expressed in the deed, was paid or agreed to be paid, and is allowed to be shown by parol proof, for the effect of this alleged agreement was to limit the use of the property conveyed, or a portion of it, to a particular purpose, thus changing the deed, from one absolute upon its face, to one with a condition annexed. This cannot be done by parole proof. (18 Michigan, 354; 3 Nevada, 120, 132; Hilliard, Real Prop., Vol. 1, 77, 348, 353, note; Kent's Com., Vol. 4, 144, 125 side page, and 143 note C.; Willard's Eq., 286; Starkie's Evidence, 1002, etc.; 2 Hilliard, Real Prop., 275, etc., 228, § 30; 46 Ills., 297 and 163, and 250; 1 Greenleaf, § 275, etc.; 2 Kernan, 561; 6 Smith, 39.) The action was one upon the equity side of the court strictly, to enforce a specific performance of

an alleged agreement concerning lands.  At least such it was at the commencement, but the judgment seems to have been rendered upon the law side for damages for breach of contract. As the case was commenced and carried through, defendants were not entitled to a jury, but as it resulted from the finding of the court, they were so entitled; and thus by means out of their power, they were deprived of even a chance to demand a jury.  (11 Wallace, 610.)  A court of equity will sometimes decree compensation,(never damages, strictly speaking,) when it is incident to the relief prayed for and granted—as when a defendant, since the commencement of proceedings, has put it out of his power to comply with the order of the court, but jurisdiction must have been first acquired by the court of equity, rightfully.

In this case the petition and amended petition, and the proofs, show conclusively that it is no case for equitable relief, and, therefore, just as conclusively no case where compensation or damages could be awarded.  Specific performance will. not be decreed when the contract is not certain, and definite in its terms.  (Willard's Eq., 266 to 268; Story's Eq. Im., 729 and 731, Par. 767–769; Story's Eq. Im., 724, Par. 764; 4 Wallace, 513; 25 Texas, 408; 19 Wisconsin, 99; Parsons' Cont., 2 Vol, 513.)  There is nothing to show, either in the allegations or the proof, what kind of a mill was to be erected; whether to cost one thousand or fifty thousand dollars; whether it was to saw one foot or fifty thousand feet of lumber per day, or in fact that it was to be maintained one hour, or to saw one foot of lumber, thus rendering it impossible for the court to make any decree for its erection, for what one man might deem a good mill would cost one sum, and what another man would deem a good mill would cost a much larger sum.

Courts of equity never interfere to relieve parties from such uncertain contracts.  In other words, they do not undertake to make contracts for parties, only to enforce them when they are certain, definite, and not successfully disputed.

Again:  The plaintiff in his amended petition, alleges it to be out of defendant's power to comply with this contract,

when he alleges their insolvency, and courts of equity will
not decree an impossibility. If, as claimed by plaintiff's
counsel, the contract to erect the mill was independent of the
conveyance, and not merged in it, then it is concerning lands,
and, therefore, void by the Statute of Frauds, and such statute
need not be pleaded when the defendants deny the agreement,
as in this case.   (Hilliard on Vendors, 123, § 39; 25 New York,
153.)   The right to a vendor's lien is claimed as though that
would give a court of equity jurisdiction, seemingly with the
purpose of avoiding a jury trial, but that has been effectually
disposed of by the finding of the court; or, if not, the rule is
too well settled for argument, that such right cannot exist
when the action is upon contract like this, and the damages
unliquidated.

The party should first seek his remedy upon his contract,
in a court of law, where the defendants have a right to a jury
trial, and then if judgment be obtained, there may, under the
proper state of facts, be some ground for enforcing a vendor's
lien.   (4 Kansas, 76; 3 Kansas, 172.)   The damages alleged
and testified to, were merely visionary and speculative, and
not such as a court can recognize.   They were as to what
profits plaintiff would have realized if a mill had been erected;
not what he lost, because it was not erected; not that it
changed the market value of any single article of his prop-
erty; nor that the want of it put him to any extra expense;
nor, indeed, is there any proof that he was to have the right
to buy one foot of lumber, and the absurd and flimsy proof
that some town lots of his, six or seven miles away, and a
homestead that he had forfeited, would, in the opinion of the
witnesses, be enhanced in value, is not such proof as courts
base their judgments upon.   (32 Missouri, 275; 23 Howard,
487; 28 New York, 72; 4 Barb., 261; 3 Barb., 424; Parsons
on Cont., Vol. 2, 459, etc., and notes; 48 Ills., 308; 45 Ills.,
206; 20 Wisconsin, 262 and 297; 21 Wisconsin, 439; 16 New
York, 489.)   By the finding of the court, as indicated in its
judgment for damages only, the defendants were entitled to a
trial by jury; and when the conclusion was reached denying
the plaintiff a specific execution of the contract or other equi-

table relief, the court should have dismissed the petition or sent the issues to a jury for trial. (6 Wallace, 134; 45 Ills., 350; 42 Ills., 471; 40 Ills., 182–3; Willard's Eq., 308, etc.) It cannot be claimed that a jury trial was waived, for such was not the fact, as shown by the record, and the only mode of such waiver is pointed out by the code. (Code of 1862, p. 93, § 276 ) As the case stood upon the pleadings and was tried, it was not proper even to demand a jury trial. (Code of 1862, p. 90, §§ 260 and 261.) When the court found only damages were recoverable, which was strictly and only within the province of a court of law, it should have sent the issues to a jury for trial on its own motion. Else a plaintiff has only to allege something which, uncontradicted, would show a right to equitable relief, though having no foundation in point of fact, to deprive a defendant in every case of his constitutional right of trial by jury. (35 Ills., 375; 33 Ills., 227; 43 Ills., 280; 6 Nevada, 145.) This case having been tried by the court below, upon written evidence alone, and such evidence being in the record, and all before this court, this court will look into such evidence (it being an equitable case upon the pleadings,) to ascertain if the court below has arrived at a correct conclusion. upon the facts as well as upon the law, and will try the case upon the record as it stands, and no exceptions were necessary or in fact proper. (42 Missouri, 551; 4 Minn., 282; 15 Wisconsin, 265; 40 Ills., 99, 100 and 101; 23 Wisconsin, 334; 3 Nevada, 131; 16 Gratten, 355; 2 Iowa, 20 and 496; 13 Iowa, 40; 16 Wisconsin, 547; 23 Wisconsin, 343.) The preponderance of testimony is clearly with the defendants. At most in regard to the first or preliminary conversation on the 10th of October, Fraley and son are flatly contradicted by Bentley and Andrews, and the last named are corroborated by Ruffner and Rounds, and all of them swear Burleigh was not present; and, indeed, he only states he heard a preliminary conversation, and not the concluding one.

Then Bentley and Andrews both testify to the concluding agreement on the 4th of November, when the deed was passed and the money paid, and they are as to that wholly uncontradicted, and borne out by the deed upon its face.

Surely no court can base equitable relief, either in specific terms or by adjudging damages in dollars and cents, upon such allegations and such proofs as are found in this record.

*Wm. Tripp* and *Bartlett Tripp*, for appellees.

Errors of fact and law cannot be joined in one assignment. To correct errors of fact the party aggrieved must in the first instance apply to the court in which such errors were made; and it is only when he has exhausted his remedies in the court below that the appellate court will take cognizance, and then only of the errors made by the court below in granting or refusing the relief asked for. (2 U. S. Dig., 163, §§ 87, 90, 130, and 181, §§ 613 and 619; 9 U. S. Dig., 190, §§ 635 and 197, § 29; 8 U. S. Dig., 149, § 675; Ohio Dig., 123, § 41; 20 U. S. Dig., 351, § 68.) The appellate court in this case can review the errors of law only apparent upon the record. The cause cannot be heard upon its merits. It can be tried *de novo* only on appeal. (Ohio Dig., 169, §§ 60 and 167, § 33.) Plaintiffs could appeal. (See Organic Act, § 9.) In Ohio, from which state our 1862 Code comes, chancery jurisdiction is confined to the Common Pleas Court, from which appeal and petition in error is not allowed. (Nash Practice, 41–2; Ohio Dig., Title " Appeals," §§ 73, etc. and 167, § 33.) Defendants below made no objection to trial by depositions alone, and cannot raise the objection for the first time in the appellate court. Parol testimony is always admissible to prove the grantee promised to pay a sum additional to that expressed in the deed, and such a promise is valid and binding. (*Nickerson v. Saunders*, 36 Me., 413, approves *Taylor v. Carlton*, 7 Crim'l, 175; Simmons Wis. Dig., 232, §§ 74 and 270, § 18; Minots' Mass. Dig., 294, §§ 6, 8, 9; 26 N. Y., 318; 2 Abb. N. Y. Dig., 676, §§ 926–7–8–9 and 930; 1 N. Y. Rep., 509; Read, 514; 1 Abb. U. S. Dig., 220, § 13; 1 U. S. Eq. Dig., 317, §§ 281–3–5, and 453, § 565; 7 U. S. Dig., 159, § 135; 9 U. S. Dig., 131, § 91–2; 11 U. S. Dig., 133, § 79; 14 U. S. Dig., 158, §§ 81–6–7; 16 U. S. Dig., 192, §§ 86, 99; 26 U. S. Dig., 229, §§ 487, 491–2; 27 U. S. Dig., 272, §§ 526–7–32; 29 U. S. Dig., 281, § 487, 496–7.) By answering in chief instead of demurring, defendants below

submitted their defense to the cognizance of the court, and cannot now raise the objection that plaintiff had an adequate remedy at law. (2 Abb. N. Y. Dig., 555, §§ 74–5–7 and 90–2; *Truscott v. King*, 6 N. Y., 147; Read, 165; 4 Abb. Dig., 433, § 16; 1 Abb. Dig., 135, §§ 118, 119; Minots' Dig., 250, § 45; 1 Abb. U. S. Dig., 266, §§ 1, 2, 3; id., 60, § 210; Ohio Dig., 359, § 123.) Defendants below failing to make any objection to the equity jurisdiction of the court, it was competent for the court to decree damages to plaintiff in lieu of the equitable relief prayed for in the complaint. (9 U. S. Dig., 153, §§ 567, and 155, § 30; 17 N. Y., 491; 18 U. S. Dig. 680, § 93; 19 U. S. Dig., 638, §§ 15, 16, 17; 26 U. S. Dig., 181, § 10; 29 U. S. Dig., 597, §§ 60 and 299, § 154; 1 Abb. U. S. Dig., 266, §§ 3 and 59, § 198.) The record does not show but this action was tried on the law side of the court. Plaintiff below asks a judgment for damages, and the record shows he got such judgment. The complaint is sufficient to sustain an action in law or equity. The issue raised by the answer is that of additional consideration, and the most of the testimony is to that issue. Parties can waive a trial. (1862 Code, 90, §§ 260 and 276.) Record does not show any objection to trial by court, and the presumption is a jury trial was waived. (17 N. Y., 491–8; Wait's An. Code, 444, n. i.) And the decision of the court not being required to be in writing, (1862 Code, § 277,) it is presumed the court found the facts which support the judgment, for every presumption is in favor of the judgment. (1 Abb. U. S. Dig., 62, § 254.) And if it were error to render a judgment for damages in an equity suit, and the record shows that such judgment was rendered, but does not show that it was tried on the equity side of the court, it will be presumed to have been tried on the law side of the court if, thereby, no error arise.

BARNES, J.—This suit, or action, is brought into this court by appeal, prosecuted by defendants below. The first important question presented is, as to the character of this suit or action.

The petition has the substantial requisites of a bill in chancery, and an action at law. So, too, the summons is for

specific relief and for a judgment for damages. Manifestly here is a misjoinder of actions—a pleading bad upon the face. But can the defendants now avail themselves of any advantage on account of the improper joinder of actions? We think not. This objection should have been taken by demurer, motion to strike out, or, perhaps, by motion to compel the plaintiff to elect upon which cause of action he would proceed.

These rights the defendants lost the moment they took issue upon the plaintiff's petition. They then waived any objection to the first pleading, except such as were jurisdictional, and that the complaint or petition as a whole did not state facts sufficient to constitute a cause of action.

This waiver is to be construed like a stipulation or agreement, that defendants are content with the plaintiff's pleadings, and take issue upon it as presented.

It is unnecessary longer to pursue this investigation, as touching the equitable relief sought, as none was decreed, and, therefore, that branch of the case is disposed of.

The judgment appealed from then, being judgment in an action at law, the first natural inquiry would seem to be, are the appellants, in this court, in such a way as to urge objections if they really exist?

Without attempting to settle the practice upon that question, as this is, probably, the only cause that will be presented under the Act of 1862, the same being repealed, we have concluded to regard this case as properly before us, and to dispose of it upon the merits.

Before considering the evidence, it is proper we should dispose of a preliminary question: Is a deed, in the usual and ordinary form, such a written agreement that the parties to it are estopped from showing, by proof, *aliunde*, the true and actual or additional consideration, beyond the consideration named in the deed?

We think not. And we regard the following authorities sufficient upon that point, although many more might be cited: (36 Maine, 413; 7 Greenleaf, 175; 23 Wisconsin, 519; 26 New York, 378; 17 Ohio, 617.) But the appellants insisted

if this is to be treated as an action at law, then the court below erred in allowing the testimony to be taken by deposition.

We think not. The defendants, by consenting to the blending of the two causes of action, consented that evidence might be received in any of the modes applicable in an action at law or suit in equity. And we might with propriety here remark, that it comes with a bad grace for a party to lay by in the lower court and allow all the advantages he might have availed himself of to pass unchallenged, and then come into this court and complain of that which results from his own carelessness or cleverness in the court below.

We are gratified to know this criticism does not apply to the counsel now engaged in this cause, as they are in no way answerable for the pleadings on trial in the court below. The next question then is, this: Is there evidence to support the finding?

The complaint, or petition, charges that this land was of the value of one thousand dollars or more. That the defendants agreed to give plaintiff cash, four hundred dollars ($400,) lumber, one hundred dollars ($100,) and to erect on their, the defendant's, own land, thus purchased, a steam saw-mill, in the following season, the erection of which, in the immediate vicinity of the plaintiff's other lands, would have been to the plaintiff, by enhancing the value of his adjoining lands, at least worth five hundred dollars, and that this last consideration (the building of the mill) formed an important or controlling consideration for the conveyance of the one hundred and sixty acres of land.

Was this land conveyed worth one thousand dollars or more? We think the preponderance of the evidence clearly established that proposition. There is the testimony of the plaintiff, of Benton Fraley, and of Burleigh, all estimating the land at about that sum, and one or more at higher figures. Then there is the testimony of the defendants, stating that the five hundred dollars, the consideration in the deed, was all the lands were worth; but it should be remembered, however, that the two Fraleys give some reasons upon which they base their judgment. They state that four or five hundred

dollars worth of timber was, after this sale, taken from a few acres of this land, and all agree it was a valuable timber lot.

We have no difficulty in determinating that the evidence fully establishes the fact that the value of the land conveyed by the plaintiff to the defendants, was worth at least nine hundred dollars. But did the defendants agree to pay the plaintiff that sum for it? This is the most difficult feature of this case. Fraley swears that the defendants applied to him to purchase the land, and stated they wanted it to build a steam saw-mill upon; that he said to the defendants, "we needed a mill bad in the neighborhood, and for the sake of getting a mill I would let you have the land." They wanted to know how much he would take for the land. He told them he was not willing to take less than one thousand dollars. They replied in substance, "I ought to take less for the purpose of having a good mill upon it." Now mark the language: They did not question the value of the land, or insist the price was too much; but urged the benefits to him by reason of the building of a good steam saw-mill. The witness says: "they then made me an offer of four hundred dollars in cash, one hundred dollars in lumber." I then asked them "when they would build the mill?" "they told me they would go right to work getting out the timber, and would have the mill completed in the spring of 1866," being the next spring. "I then said to them, if they would give me four hundred dollars in money, and complete the mill in 1866, and give me one hundred dollars worth of lumber, they could have the land." This proposition they accepted.

This testimony is strongly corroborated by Benton Fraley and Dr. Burleigh; and Burleigh, although called first by plaintiff, is recalled by defendants. This testimony is in part, and only in part, denied by the defendants.

The defendants swear they only agreed to pay four hundred dollars for the land, and that they did not agree to build the mill. But Mr. Bentley swears that the building of the mill was talked of between them, and that Fraley wanted the defendants to give a bond conditioned that they would build the mill; and this is inconsistent with the idea that they had

not agreed to build the mill, and strongly corroborates the statement of Fraley, at least so far as to prove that up to that time Fraley understood the building of the mill to be a part of the considerations for the land. Fraley and Bentley agree that Bentley and Andrews declined to give the bond, but each assigns a different reason for the refusal. Bentley says they declined because they had not agreed to build the mill, and Fraley says they declined, and gave as a reason that they were going to getting out the timber at once, and that their word was good for what they had agreed to do. But another important item, as evidence, bearing upon this matter of agreement to build the mill, is the second allegation of the answer of defendant Bentley. He there states that to induce Fraley to sell Bentley and Andrews this land, W. A. Burleigh gave Fraley a property interest of one hundred dollars. This is also proved by Burleigh himself—that he was desirous of having a steam saw-mill built, and to help the matter along and get the mill, he gave Fraley some landed interest.

The evidence, then, is clear that it was understood by all the parties that this steam saw-mill was to be built in the spring or summer of 1866, and we think the preponderance of the evidence is so strongly in favor of the plaintiff, that it was a part of the agreed consideration for the purchase of the land in question, that the mill should be built, that the court below was justified in so finding.

It is with much zeal argued that there was no description or kind of mill agreed upon, and no time that the mill should remain on the land. We need only apply a good common sense rule to settle this question. A good steam saw-mill, as ordinarily understood, would be a mill capable of doing such work, and to such amount, as is ordinarily done by good mills; the words "good mill" have a reasonably definite meaning. But we are told there is no rule applicable by which the damages in this case can be assessed; that the benefits to be derived by plaintiff, if any, were remote, speculative or fanciful.

We think not. Fraley swears he asked one thousand ($1000) dollars for the land, and the evidence shows it was

Fraley vs. Bentley, et al.

worth that sum, and that defendants did not ask him to take less, or question the value of the land, but urged that the benefits by reason of the building of the steam saw-mill, with the four hundred in money, would be a fair payment for the land. If, therefore, the testimony of Fraley is to be regarded as true, strongly corroborated in many particulars by the testimony of other witnesses, it must be said that the benefits to be derived by the plaintiff, as agreed and understood by the parties, was the difference between the price actually paid and the value of the land; and this furnishes a very correct rule, tested, however, by another rule, namely: That as a consideration for the defendant's agreement to build a steam saw-mill in a certain place, by a certain time, the plaintiff paid the defendants in the sale of the land the sum of five hundred dollars, in the conveyance of this land, the defendants having entirely failed to build the mill, the least that can be said is, that in equity and good conscience, the plaintiff should recover the value or amount he paid for defendant's promise and agreement to build the mill. Or by still another rule. The evidence clearly establishes the fact that the increased value of Fraley's land in the immediate vicinity of this land, would have been at least five hundred dollars. We think, therefore, that the court below was fully warranted in estimating the damages the plaintiff had sustained at five hundred dollars, and we find no reason for interfering with that finding. Let the order be, that the finding and judgment in the court below are affirmed with costs.

See Appendix, Note A.