## COSTON et al. v. ADAMS.

No. 33536. March 28, 1950.

Rehearing Denied Dec. 5, 1950.

*224 P. 2d 955.*

Hervey, May & Owens, of Oklahoma City, for plaintiffs in error.

Butler & Rinehart, of Oklahoma City, for defendant in error.

JOHNSON, J. The parties to this action appear in the same order as in the trial court, and are hereafter referred to as plaintiffs and defendant, respectively.

Plaintiffs bring this action against the defendant alleging that they entered into a written contract with defendant by the terms of which they were to prepare plans and specifications and furnish supervision for the construction of a building to be known as the "Medical and Dental Center." The written contract provides:

"Design Service Contract"

"This Agreement made this 28 day of August, 1945, by and between Robert H. Adams, hereinafter called Owner, and Coston & Frankfurt, a co-partnership, composed of Truett H. Coston and W. W. Frankfurt, hereinafter called Architects-Engineers,

"Witnesseth, that whereas Owner intends to erect one certain four-story clinic and office building located on or about 523 North West Eleventh Street, Oklahoma City, Oklahoma, and containing approximately 500,000 thousand cubic feet of space,

"Now, Therefore, the Owner and the Architects-Engineers, for the considerations hereinafter named agree as follows:

"The Architects-Engineers agree to perform, for the above-named work, professional services as hereinafter set forth.

"The Owner agrees to pay the Architects-Engineers for such services a fee of 6% of the cost of the work, with other payments and reimbursements as hereinafter provided, said percentage being hereinafter referred to as the 'basic rate.'

"The parties hereto further agree to the following conditions:

"1. Services: In co-operation with Owner, Architects-Engineers will make a careful survey and analysis of their requirements and furnish the Owner preliminary studies, plan and cost estimates of the work contemplated, the preliminary drawings as approved by Owner, and from which Architects-Engineers will prepare working drawings and specifications. Plans will include the preliminary drawings on which estimates of cost are to be based, working drawings and specifications. The working drawings will consist of a plot plan, foundation plans, floor plans, cross sections, general details, large and full-sized detail drawings as required and plans of mechanical building trades and mechanical building equipment. The specifications will describe the scope of the construction work, the kind of materials and equipment and the class of workmanship required.

"2. Time of Completion: The drawings and specifications will be completed as soon as is reasonably practicable. The estimated completion time is 90 days from the date of Owner's approval of the preliminary drawings.

"3 Fee: In consideration of the services rendered, Owner is to pay Architects-Engineers a fee of 6% of the cost of the work, such fee shall include supervision by Architects-Engineers against defects and deficiencies in the work of contractors, but such supervision by Architects-Engineers is to be distinguished from the continuous personal superintendance of the work such as would be rendered by clerk-of-the-works.

" . . .

"5. Payments: The basic fee of 6% shall be paid as follows:

"4% of such fee shall be paid in the following manner: $1,000.00 upon the completion of the preliminary studies; $1,000.00 when Architects-Engineers begin specifications and general working

drawings (exclusive of rates); the balance of such 4% of the basic fee shall be paid during the course of construction of working drawings and specifications and in an amount each month pro-rated according to the amount of such work done by Architects-Engineers during such month.

"The balance of Architects-Engineers fees in the amount of 2% of the basic rate and any sums due Architects-Engineers by reason of cost of construction being greater than estimated, shall be paid when construction work is completed. Payments to the Architects-Engineers other than those on their fees, fall due from time to time as the work is done or as costs are increased.
" . . .

"The Owner and the Architects-Engineers hereby agree to the full performance of the covenants above.

"In Witness Whereof they have executed this agreement the date and year first above written.

"Coston & Frankfurt, A co-partnership composed of Truett H. Coston and W. W. Frankfurt, Architects & Engineers

"By /s/ Truett H. Coston
"One of the Partners.
"/s/W. W. Frankfurt
"/s/ Robert H. Adams, M.D.
"Robert H. Adams, Owner"

Plaintiffs alleged that this contract was later orally modified to provide for a six-story building, and that, as thus modified, and pursuant to oral instructions of defendant, they prepared working plans, specifications and drawings; that the reasonable estimated cost of the construction of a building as outlined in the plans and specifications was $680,000; that there is due and owing them the total sum of $27,200, or 4% of the cost of construction of such building, upon which there is a credit of $7,000, leaving a balance of $20,200 due the plaintiffs.

Defendant answered, admitting the execution of the design service contract with plaintiffs, but denied that same was continued or carried into completion, asserting that at the time of the execution of the contract and as an inducement therefor, the plaintiffs assured him that upon completion of a preliminary plan and sketch he could obtain financial assistance for the construction of the building; that pursuant to the contract and the representations of the plaintiffs, he received preliminary sketches and studies for which he paid the sum of $1,000; but that upon his attempt to use such preliminary plans and studies he found that they were of no value to him; that he could not obtain financial assistance without complete plans and specifications; that thereafter he entered into a new oral agreement with reference to the preparation of engineering plans and specifications; that the original written contract was abandoned, and that by the terms of the oral agreement the building was increased from a four-story to a six-story building; that the time for the preparation of plans and specifications was extended, and plaintiffs agreed to await the financing of such building for payment of their fees; that during the preparation of such plans and specifications, plaintiffs persuaded him to advance them the sum of $6,000 upon the assurance that the plans and specifications when completed would be usable and proper for the erection of the building; that upon receipt of the plans and specifications he furnished them to builders, contractors and financial institutions; that the materials called for in the specifications could not be obtained, and he therefore could not obtain financial assistance or contracting assistance to erect the building.

Defendant specifically denied that there was ever an estimate of $680,000 for the construction of the building upon which the plaintiffs would be entitled to a fee of 4%, but alleged that pursuant to the oral contract, upon failure to obtain financial assistance and material to construct said building, he was not indebted to plaintiffs in any sum whatsoever.

A cross-petition was filed by the defendant and an answer thereto by plaintiffs, but upon the trial of the issues the court sustained a demurrer to the evidence purporting to support the matters alleged in the cross-petition, and defendant not having appealed from such order, the matters therein are not involved in this appeal.

In their reply to defendant's answer, plaintiffs denied all the material allegations contained in the answer which were not specifically admitted or alleged in the plaintiffs' petition. Plaintiffs denied that they induced defendant into executing and delivering the contract by any representation or promise that he could obtain financial assistance or a loan from third parties by using the preliminary studies, alleging further that such vague and indefinite representation to be performed in the future is not sufficient to constitute grounds of defense. They further denied specifically that they at any time represented to defendant or guaranteed that he could obtain financial assistance in the erection of the building, stating further that the defendant represented himself to be a man of sufficient business experience, reputation, affluence and influence to finance and build a six-story building, and that they agreed to prepare the plans and specifications as directed by the defendant. They further stated that following the receipt of the plans and specifications, the defendant did obtain a loan commitment from the Massachusetts Mutual Life Insurance Company in the amount of $600,000, and that it was by reason of defendant's refusal, failure and neglect that defeated the construction of the building, and that they were not responsible for its failure.

Plaintiffs further asserted that they prepared with due diligence the plans and specifications for the building, taking into consideration the requirements of the defendant, and that defendant is estopped to assert a defense, having never notified the plaintiffs of any difficulty concerning the plans and specifications. Plaintiffs asserted further that they arrived at the estimate of $680,000 by taking into consideration the estimated cost of construction made by the Harmon Construction Company, or Al Harmon, acting for and on behalf of defendant; that the estimated cost of the building actually exceeded $680,000, but these plaintiffs reduced the estimate and the defendant orally approved same; that by virtue of the approval of the defendant in the amount of $680,000 he is unable to deny that sum being a reasonable estimate on which to establish a fee. Plaintiffs further assert that following the execution of the written contract and in consideration of preparation of working plans and drawings, they billed regularly defendant pursuant to contract; that defendant made certain payments thereof, and by this and other actions fully ratified, confirmed and acted pursuant to the terms of the written contract; that the defendant at all times indicated his willingness to abide by the written contract, adopted and fully utilized and ratified the services of plaintiffs, the plans and specifications, and received all benefits flowing therefrom, and reiterated their prayer for $20,200.

Upon these issues a jury returned its verdict in favor of defendant. Motion for a new trial was overruled, resulting in this appeal.

Numerous assignments of error are made, but for the sake of brevity only the essential questions will be considered.

It is contended by plaintiffs that they have fully complied with the written contract as orally modified, and that this question was submitted to the jury, together with the question of whether or not alleged oral modification was made permitting delay of payment until building was financed, which resulted in judgment for defendant, and further assert that the court erred in submitting to the jury any question of

fact as to abandonment of the written contract and the making of a complete new oral contract as contended for by defendant, and that under the evidence plaintiffs were entitled to an instructed verdict in the sum of $20,200 and costs.

The undisputed evidence discloses that the contract, as heretofore set out in part, was entered into as shown thereby, but the evidence is in conflict as to whether the contract was subsequently modified orally, only by providing for six stories instead of four. The testimony of plaintiffs affirms this; however, the allegations and testimony of the defendant were to the effect that there was no such oral modification of the written contract but a complete abandonment of the written contract and the making of another oral contract covering the complete subject; that the new oral contract provided that the right of the plaintiffs to compensation was dependent upon the success of the defendant in financing the building; that the fulfillment of such condition was a precedent to plaintiffs' right to recover.

If the contention of the defendant is true, and the jury found it so, the rule applies that where the right of an architect to compensation is made by contract dependent upon the success of the employer in financing the building, the fulfillment of such condition is a precedent to his right to recover. 6 C. J. S., Architects, sec. 14 (a).

The record discloses that defendant made payments, the first being for $1,000 dated September 13, 1945, which was made pursuant to the original contract. On this date defendant received his preliminary plans for the four-story clinic and office building; as to this there is no dispute. Thereafter, defendant complained to plaintiffs that he was unable to use the preliminary plans for the four-story building; that no one would finance the building; that the plans were worthless; that he had just as well to have thrown his money down a rat hole. Thereafter, on Oc-

tober 16, 1945, defendant made a payment of $1,000, contending that it was agreed that he was to have credit on the new contract for the first payment of September 13, 1945. On this date plaintiffs gave a letter to defendant stating that plaintiffs were ready to commence the plans for the six-story "Medical Dental Center" building. Plaintiffs contend that this second payment was on the original contract, and defendant contends that same was paid on the new contract. Subsequently, the following payments were made: December 20, 1945, $2,750; January 31, 1946, $600; January 31, 1946, $1,250; February 15, 1946, $1,000. There is no dispute as to these payments being made, but defendant contends that the payments were made on the new contract, while plaintiffs contend that they were paid on the old contract as orally modified, and that because the defendant had accepted the benefits of the original contract and made payments thereunder, he is estopped from denying the rights of plaintiffs under the contract.

Under 15 O. S. A. §152, a contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful. Herrington v. Hackler, 181 Okla. 396, 74 P. 2d 388.

The evidence being in conflict as to the contractual relationship between defendant and plaintiffs, we do not think there was an equitable estoppel. We cannot say that the findings of the jury were not sustained by the evidence, or that the plaintiffs were misled or injured in this transaction. In order that the doctrine of equitable estoppel may be successfully invoked, it is necessary that the party asserting the plea shall have been misled to his prejudice. Herrington v. Hackler, supra.

Plaintiffs contend that the trial court committed error in refusing to submit special interrogatories requested by them, admitting, however, that their requested interrogatories were covered

by the court's general instructions. This contention is without merit. Under article VII, sec. 21, Oklahoma Constitution, it is within the discretion of the trial court to refuse to submit requested special interrogatories to the jury.

It is next contended that the court erred in giving certain instructions and refusing to give others requested by plaintiffs. The instructions particularly complained of are instructions Nos. 3, 10 and 17. Instruction No. 3 was a statement of the allegations of the defendant in his cross-petition. Instruction No. 8 instructed the jury that defendant had not produced sufficient evidence to entitle defendant to recover on his cross-petition. We see no error in the giving of instruction No. 3 stating the issues as made by the pleadings, in view of the later instruction No. 8.

Instructions 10 and 17 were as follows:

"10. You are further instructed that the defendant admits that the written contract was entered into by him but contends that such written contract was later abandoned by all of the parties and a new contract made by a subsequent oral agreement, by the terms of which plaintiffs agreed to furnish preliminary studies and sketches and plans and specifications for a six-story building, and that the time was extended within which to prepare such plans and specifications, and that the plaintiffs agreed to await the construction of the building and the financing thereof before receiving their fees. In this connection, you are instructed that the burden of proof is upon the defendant to prove by a preponderance of the evidence that such written contract was abandoned by the parties and supplanted by such subsequent oral agreement."

"17. You are further instructed that the law required of plaintiffs that they use reasonable and ordinary care, skill and diligence as would other architects and engineers in the community engaged in the same type of service, and if you find that a building according to the plans and specifications prepared by them could not reasonably be constructed, then your verdict should be for the defendant."

In his answer, defendant alleged that plaintiffs undertook the preparation and presentation of plans and specifications for a six-story building, which, under the existing circumstances, would be one that could be constructed and one upon which defendant could obtain financial assistance; that upon receipt of the plans and specifications, he furnished them to builders and contractors and to various financial institutions, and found that said specifications, as prepared, could not be met by builders or contractors. The defendant, therefore, could not obtain financial assistance or contracting assistance to erect the building referred to.

An examination of the record shows that there was some evidence of defendant tending to prove the above-quoted allegations of the answer, both on the question of inability to procure specified materials and inability to finance the construction. Under the record, we do not think the trial court erred in giving instructions Nos. 10 and 17.

We have carefully examined the record, including the instructions, and find that the instructions as a whole fairly present the law applicable to the issues in accord with the theory of each party participant, and it was not error to refuse the instructions requested by plaintiffs. Hartman v. Dunn, 186 Okla. 9, 95 P. 2d 897, and cases cited therein.

It was alleged by the defendant that the written contract was abrogated and superseded by an oral contract, and that under the terms of the new contract he did not owe the plaintiffs anything because of failure to obtain financial backing to build said building. It is contended by plaintiffs that this was not and could not legally be done. The facts upon which plaintiffs and defendant sought to substantiate their contentions were in dispute. This court in Webb v. Moran, 186 Okla. 140, 96 P. 2d 308, said:

"It is, of course, axiomatic that the parties to an existing contract may subsequently enter into a valid agreement to extinguish, rescind or modify the former contract. 12 Am. Jur. par. 431, pg. 1011; 12 Am. Jur. 983, par. 405; Appleman et al. v. Pepis, 117 Okla. 199, 246 P. 225. But as with any other agreement, the contract to rescind must be by mutual consent of the parties."

From a careful study of the record, we find that there is sufficient evidence which reasonably tends to support the verdict of the jury and judgment of the trial court based thereon in favor of the defendant, and it was not error to overrule plaintiffs' motion for a directed verdict in their favor, the new contract being oral; the facts were in dispute; the language used and the meaning to be given it were questions of fact for the jury. The construction of words used is for the court, where an oral contract is distinct in its terms, but where an oral contract is to be gathered from talks between the parties, and especially from talks on more than one occasion, as in this case, the question as to what the contract was, if controverted, must usually be tried by the jury as a question of fact. Hammond Coal Co. v. Lewis, 248 Mass. 499, 143 N. E. 309, and cases therein cited.

We find no substantial or prejudicial error in the record, and therefore the judgment is affirmed.

DAVISON, C. J., and CORN, GIBSON, LUTTRELL, and O'NEAL, JJ., concur. ARNOLD, V. C. J., and WELCH and HALLEY, JJ., dissent.