600 P.2d 830

**Richard E. HYDER and Pauline Hyder, his wife, Plaintiffs-Appellees,**

v.

**June Grimm BRENTON, David M. Meadmore and Manuel Medina Martin, Defendants-Appellants.**

**No. 3405.**

Court of Appeals of New Mexico.

June 14, 1979.

Rehearing Denied June 28, 1979.

Keleher & McLeod, P.A., Michael L. Keleher, Robert H. Clark, Albuquerque, for plaintiffs-appellees.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Bruce Hall, Edward T. Curran, Albuquerque, for defendants-appellants.

## OPINION

ANDREWS, Judge.

This suit in Bernalillo County District Court results from a dispute between neighbors, Mr. and Mrs. Hyder and the Brentons (Mrs. Brenton, her son, Manuel Medina Martin and his cousin, David Meadmore). The Hyders sought an injunction against further improvements on land they had sold to Mrs. Brenton, along with damages, and rescission of the sale. The district court issued the injunction pending trial. After the non-jury trial the court found for the Hyders and granted rescission of the sale and injunctive relief. Defendants appeal, specifically objecting to conditions of the judgment which would permit them to retain the property if the property is replatted and if all permanent structures and improvements are removed. The question is whether erection of a wall and use of the property for gardens rather than a single family dwelling violates a restriction in the deed by which the Hyders conveyed the property to Mrs. Brenton. The restriction reads: "One family dwelling—2500 square feet exclusive of open porches and garage." We do not find this provision so limiting and therefore reverse.

The Hyders live on Hyder Avenue, S.E., on Lots 5 and 6 in Block 18 of the Monterey Hills Addition in Albuquerque, New Mexico. They also, along with Mr. Hyder's father, Latif Hyder, owned the adjacent Lots 3 and 4 to the east along Hyder Avenue. Martin and Meadmore owned Lots 10 and 11 and the eastern thirty-seven feet of Lot 9, which are located to the south of Lots 3 and 4, along San Rafael Avenue, S.E. Thus, the parties had common back property lines.

In April, 1975, while Mr. Meadmore and Mr. Martin were in the process of designing and building their home and gardens on

Lots 9, 10 and 11, they spoke to Mr. Hyder about the possible purchase of Lots 3 and 4. Their intention was to acquire the adjacent lots for Mrs. Brenton so that she could build a house for herself facing Hyder Street, with gardens in between and joining the two homes. Mr. Hyder accepted $1,000 from Mr. Meadmore and entered into an option agreement dated April 2, 1975, whereby Mr. Meadmore could purchase Lots 3 and 4 for a total price of $16,000 before August 3, 1975. The option mentioned no restrictions on the property. During the same month, Mr. Meadmore and Mr. Martin conveyed Lots 9, 10 and 11 to Mrs. Brenton.

Nothing transpired between the parties in regard to the property until August 1, when Mrs. Brenton met with Mr. Hyder and his father to close the transaction. The three talked for about one-half hour and Mrs. Brenton described the house she intended to build on Lots 3 and 4, indicating that she planned to begin building the next spring. Mr. Hyder drew up a standard printed short form warranty deed. The restriction at issue was discussed at the meeting and added to the deed after the meeting.

After purchasing Lots 3 and 4, Mrs. Brenton continued to plan her house and formal gardens, and in November, 1975, began the process of replatting her land into a single tract by vacating interior lot lines so that improvements could be placed across them. She had an architect draw preliminary plans for her house and broke ground in January, 1976. However, a short time later, she decided not to build the separate residence, but instead to remain in the original house with her son and Meadmore.

In February, 1976, the defendants obtained a building permit from the city and proceeded, in accordance with applicable zoning regulations, to build a seven foot high wall near the Hyder Street property line of Lots 3 and 4, with permanent formal gardens within.

The Hyders brought this action alleging violations of the zoning code, subdivision building restrictions, and restrictions in the deed. The district court, basing its decision on the August 1, 1975 meeting, found the existence of an oral agreement that Lots 3 and 4 would be used only for construction of a single family residence and entered judgment with the following provisions:

2. Defendants are directed to replat that parcel of land designated as Tract A on the replat of Lots 3, 4, Block 18, MONTEREY HILLS ADDITION, and Lots 10, 11 and East 37 feet of Lot 9, in Block 18, MONTEREY HILLS ADDITION No. 2, into two parcels, one parcel to be identical to that parcel of land known as Lots 3 and 4, MONTEREY HILLS ADDITION, Plat date November 9, 1939, which parcel for purposes of identification in this Judgment is designated as the north one-half of Tract A.

4. The cinderblock wall situate on the north one-half of Tract A and located within 20 feet of the lot line fronting Hyder Street SE, including all side walls within said 20 feet shall be removed, and all above ground improvements of whatever nature, exclusive, however of lawns, trees and shrubbery, there may be on the north one-half of Tract A, shall forthwith be removed by Defendants and at their expense.

5. The north one-half of Tract A shall henceforth be kept and maintained in such condition that the property is at all times compatible for construction of a single family dwelling and shall not be used as a back yard for any other residence.

6. The north one-half of Tract A shall have and contain a restriction or covenant running with the land consistent with this Judgment and is henceforth dedicated to use for a one family dwelling with a minimum size of 2,500 square feet exclusive of open porches and garage.

7. Plaintiffs are entitled to rescission and retransfer of the north one-half of Tract A and the Court therefore orders a rescission and directs the Defendants to reconvey good and merchantable title to Plaintiffs within thirty (30) days of date of this Judgment. Plaintiffs shall refund to Defendants the monetary purchase

price paid, $16,000.00 cash, without interest, at the time of Defendants' delivery of Warranty Deed. However, rescission is conditioned as stated in paragraph 8 hereof.

8. It is further ORDERED, ADJUDGED AND DECREED that the rescission herein granted by this Judgment and Order of the Court shall be delayed for a period of thirty (30) days from date of this Judgment and Defendants are hereby granted the option to retain title to the north one-half of Tract A, subject to replatting, removal of all permanent structures and improvements as herein noted, and subject to the covenants to run with the land heretofore imposed. The option to retain title shall be exercised by notice in writing filed with the Clerk within said thirty (30) day period. The Defendants however may retain a 3 foot high wall within the 20 foot setback area measuring from the lot line adjacent to Hyder Drive SE, but such 20 foot setback area shall be maintained as a front yard area, and shall not be used as the back yard of the residence situate on the south one-half of Tract A.

While this appeal raises a number of points stemming from the variety of legal theories adopted to support the judgment, including breach of contract, failure of consideration, scheme or pattern of development, dedication and zoning, we believe the decision should be made by considering the language of the deed. We therefore concentrate this discussion on the trial court's construction of the deed restriction.

 The general rule for construction of deeds is that the intention of the parties is to be ascertained from the language employed, viewed in the light of the surrounding circumstances. *Garry v. Atchison, Topeka and Santa Fe Railway Co.,* 71 N.M. 370, 378 P.2d 609 (1963). Provisions in a deed are to be construed against the grantor and in favor of the grantee, *Harris v. Four Hills Development Corporation,* 79 N.M. 370, 443 P.2d 863 (1968); *Price v. Johnson,* 78 N.M. 123, 428 P.2d 978 (1967). This is particularly true where the construc-

tion given the provision works a forfeiture. *Garry v. Atchison, Topeka and Santa Fe Railway Co., supra.*

 In our opinion, the restriction in question here merely sets a minimum size for any home to be built on the property, whenever a house is built. As construed by the trial court, the restriction requires Mrs. Brenton either to build a large home on the property or leave it completely unimproved. According to the trial court's literal interpretation of the deed restriction, each lot must be used *only* for a 2500 square foot home. Such an interpretation is too narrow. Restrictive covenants must be considered reasonably, though strictly, and an illogical, unnatural or strained construction must be avoided. *Montoya v. Barreras,* 81 N.M. 749, 473 P.2d 363 (1970).

 As demonstrated by the following findings, the trial court based its construction of the deed restrictions on prior discussions between the parties:

7. Prior to the conveyance of August 1, 1975, Defendant June Grimm Brenton assured Plaintiffs that Defendant Brenton intended to build a one-family dwelling on Lots 3 and 4 compatible with other houses in the immediate neighborhood, with a minimum size of 2,500 square feet exclusive of open porches and garage.

8. By the negotiations and express intentions of the parties Defendants and June Grimm Brenton, in particular, agreed to dedicate Lots 3 and 4 to use only for construction of a single family residence and such expressed intention and agreement is a material part of the consideration for the conveyance of said lots.

While Mrs. Brenton did tell Mr. Hyder and his father about the intentions she had to build a house on Lots 3 and 4, these expressions of intent did not constitute an oral contract between the parties. There is nothing in the record to indicate that Mrs. Brenton did anything more than describe her architectural plans and state her intention to build. She never agreed or promised that she would build her house within

any particular time, and she never agreed or promised to leave the lots untouched until then. There were no express agreements as to exactly how Mrs. Brenton was going to use Lots 3 and 4. Mrs. Brenton's "assurances" on August 1 did not create a contract because they were simply expressions of intent.[1] 1 Corbin, Contracts § 15, "Expressions of Intent, Hope or Desire" (1963).

Furthermore, regardless of whether or not an oral contract was created in the discussions between the parties, the prior negotiations and agreements were "merged" into the deed and a judgment cannot be based upon them. As stated in *Birtrong v. Coronado Bldg. Corp.*, 90 N.M. 670, 568 P.2d 196 (1977):

> The intention of the grantor must be derived from the language of the instrument of conveyance, and it will not be impeached except to correct or prevent injustice for such reasons as accident, mistake or fraud. (Citations omitted.) Prior considerations, negotiations or stipulations are merged in the final and formal deed executed by the parties. Although the terms of the deed may vary from the prior negotiations, the deed alone must be looked to in determining the rights of the parties. (Citations omitted.)

This case does not come within the exception for "accident, mistake or fraud", because the trial court made no such findings. The plain meaning of the deed restriction is not such as would prevent the free use of one's property. There being no express deed restriction to the contrary, we will not infer an encroachment on the free use of one's property such as that involved here. *Harris v. Four Hills Development Corporation, supra.*

The Brentons did not violate the deed restriction, and the trial court erred in determining otherwise.

In view of our disposition of the principal appeal, it is not necessary for us to consider or discuss the claim for damages made by the Hyders.

The judgment of the trial court is reversed.

IT IS SO ORDERED.

HENDLEY, J., concurs.

WALTERS, J., dissents.

WALTERS, Judge (dissenting in part, concurring in part).

Defendants have appealed the judgment of the District Court ordering a rescission of a land sale contract between the parties unless defendant-appellant Brenton, the purchaser, complied with two conditions which would permit her to retain the property: (1) replat of the property, and (2) removal of all permanent structures and improvements.

I believe only two of appellant's points require determination: (1) If the evidence supports the trial court's finding of an oral agreement restricting the use of the land, and going to partial consideration for the contract of purchase and sale, is it an enforceable agreement to build? and (2) Have appellants so used the land already as to make compliance with the alleged restrictive covenant impossible? The trial court's finding of an oral agreement is the first matter requiring review.

The trial was to the court without a jury. Much of the considerable evidence introduced related to the acts and declarations of the parties, and tended either to establish or refute the existence of an oral contract requiring appellant Brenton to build a single-family dwelling on the lot she purchased from Hyders. Appellees-Hyder contended that Mrs. Brenton's oral promise to build was memorialized by a typewritten notation

---

1. In addition, the April 2, 1975, option agreement signed by Mr. Meadmore and Richard E. Hyder makes no reference to restrictions of any sort affecting Lots 3 and 4, but does establish the consideration—$16,000 for the lots. The option gave the optionee (Mrs. Brenton) the right to comply or not comply with the terms of the option, at her sole choice and election. *Northcutt v. McPherson*, 81 N.M. 743, 473 P.2d 357 (1970). The Hyders, as vendors, were bound to comply with the terms of the option when Mrs. Brenton chose to exercise it.

on the deed: "One family dwelling—2500 square feet exclusive of open porches and garage." Mrs. Brenton insisted at trial and again on appeal that there was no binding promise to build, and that the sole consideration for the conveyance of the land was stated in the option agreement (payment of $15,000), which she paid. At the time the quoted legend was typed on the deed in August 1975, she intended to commence building the following spring. Circumstances later prevented her from doing so.

The purchase of the property was initiated by appellant Brenton through her nephew and agent, David Meadmore, when on behalf of Brenton he signed an option agreement with Richard Hyder to purchase an empty lot adjacent to Hyder's residence and directly behind the residence Meadmore shared with Martin, Brenton's son. Shortly thereafter, Martin and Meadmore conveyed title to their property to Brenton. Upon the exercise of her option to purchase, the deed to the property was delivered by Hyder to Brenton, and it contained the notation cited above. Soon after taking title to the Hyder property, Brenton replatted the two lots, now in her name, and combined them into one residential lot. In contemplation of using the empty lot as a backyard for the residence in front, Brenton proceeded to have a seven-foot wall built around three sides of the combined lots, enclosing curbs, pillars and other landscaping for a formal garden.

The trial court found that the parties had entered into an oral agreement, which formed a material part of the consideration for the transfer of the Hyder lot, whereby Brenton agreed to use the property purchased from appellees as a residential lot for the building of a home 2500 square feet or greater in size.

Where the existence of an oral contract and the terms thereof are the points in issue it is for the trier of the facts to determine whether the contract did in fact exist. *Nordin v. Zimmer*, 373 P.2d 738 (Alaska 1962). *See, Kirchner v. Laughlin*, 4 N.M. (Gild.) 386, 17 P. 132 (1888); *Coston v. Adams*, 203 Okl. 605, 224 P.2d 955 (1950).

An appellate court may not substitute its judgment for that of the trial court so long as the challenged findings are supported by substantial evidence. *Getz v. Equitable Life Assurance Society*, 90 N.M. 195, 561 P.2d 468 (1977). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. *Samora v. Bradford*, 81 N.M. 205, 465 P.2d 88 (Ct.App.1970). In determining whether there is substantial evidence to support those challenged findings which are relevant, this court is guided by the following legal principles: (1) the reviewing court will indulge all presumptions in favor of the judgment; (2) the evidence will be viewed in the light most favorable to support the trial court's findings and to the prevailing party; and (3) all unfavorable evidence will be disregarded. These rules apply equally even when the burden of proof on the prevailing party at the trial court requires clear and convincing evidence. *Duke City Lumber Co. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975); *United Veterans Organization v. New Mexico Prop. App. Dept.*, 84 N.M. 114, 500 P.2d 199 (Ct. App.1972); *Samora, supra.*

The record is replete with evidence of the expressions of Brenton's intentions to construct a single family dwelling on the lot. I believe that the conversations between the parties as evidenced by the record provide sufficient support for a finding of an oral agreement. We may not weigh the evidence to reach a finding contrary to the trial court's assessment of substantial evidence; fact-finding is the trial court's prerogative, *Duke City Lumber Co., supra.*

It is true that the only consideration stated in the option contract for transfer of the land was a promise to pay $15,000, and Brenton fulfilled that promise. But there may be other or different consideration than that which is stated in the contract for the sale of land, and the existence of such other consideration may be proved by parol evidence. The general rule that parol evidence cannot be received to contradict, vary, add to, or subtract from the valid written terms of a contract is subject to the

exception that if a written instrument fails to state the entire consideration, it may be shown by parol. *American Institute of Marketing v. Keith*, 82 N.M. 699, 487 P.2d 127 (1971); *People v. Orekar*, 22 N.M. 307, 161 P. 1110 (1916). The exception recognizes that there is no rule of law requiring all of the terms of an agreement for the sale of land to be found in the written option contract.

The exception is applied equally when the writing involved is a deed. Expression of its employment and its sustaining policy is found in 6 G. Thompson, Real Property § 3120 (1964 Repl.):

> More or less than is expressed in a deed may be proved by parol evidence as the consideration, and even a different consideration, if valuable, may be proved. . . . The effect of a consideration expressed is merely to estop the grantee from alleging that the deed was executed without consideration. For every other purpose it is open to explanation, and may be varied by parol proof.

In *Fraley v. Bentley*, 1 Dak. 25, 46 N.W. 506 (1874), although the only consideration stated in the deed was $500.00, the court found that part of the agreed consideration for the purchase of the land was vendee's oral promise to build a sawmill on the land he had purchased.

I would affirm the trial court's findings of an oral promise, since we are not at liberty to disturb those findings supported by substantial evidence, but then ask whether there exists an enforceable promise to build. If Brenton had done nothing at all with the land, would the Hyders have been able to enforce a promise to build by a decree demanding specific performance? I think not because of lack of specificity in the "agreement."

There is no doubt that Hyder intended to sell and Brenton intended to buy the lot for residential use. In fact, the evidence supports a finding that it was the intent of all of the parties involved that Brenton build a home on the premises, with some degree of understanding resulting from her detailed description of its proposed size and style.

Notwithstanding the existence of this "agreement," courts do not enforce promises lacking in certainty, as this one is, against the promisor.

A promise, to be sufficient consideration for a return promise, cannot be "so vague and indefinite in its expression that it cannot be enforced. . . ." 1 A. Corbin, Contracts 615 § 143, (1963). With references to contracts as opposed to mere promises serving as the consideration for contracts, Professor Corbin analyzes the problem as follows:

> A court cannot enforce a contract unless it can determine what it is . . . . It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness, and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.

*Id.* § 95, at 394.

There is difficulty in framing an invariable rule since "[v]agueness, indefiniteness and uncertainty are matters of degree, with no absolute standard for comparison. . . . In every case, the function of the court is to determine as far as possible, the intention of the contracting parties and to give legal effect thereto." *Id.* at 396.

The promise which the Hyders seek to have enforced is Brenton's assurance that she would build a home on the lot purchased, and that she may not use it for anything else. The terms of this promise would include the approximate size of the dwelling—3300 square feet; the style—Mediterranean; and prompt commencement of construction. Two very important prerequisites to beginning construction were expressed by Brenton during the negotiations, namely, that she did not plan to begin building until Spring; and that construction of a new home was contingent upon the sale of her existing residence. Those contingencies, together with the fact

that no time for completion of the project was ever decided upon, or even discussed, make her "promise" to build so indefinite as to render it unenforceable.

In reaching this conclusion I am cognizant of that branch of cases holding that time of performance is an essential term of an agreement, see *Crawford v. General Contract Corp.*, 174 F.Supp. 283 (W.D.Ark. 1959) and *High Knob, Inc. v. Allen*, 205 Va. 503, 138 S.E.2d 49 (1964). On the other hand, some courts have held that where no time is agreed upon for the completion of a contract, a promise to perform within a reasonable time will be implied. *See* 17 Am.Jur.2d 419–421, Contracts § 80. The presence or absence of an uncertainty in the time in which performance is required is determined according to the specific facts and circumstances of each case. *Benham v. World Airways, Inc.*, 296 F.Supp. 813 (D.Haw.1969). In this case, Hyder had no desire to sell the property until someone bought it for the purpose of building a house upon it. He was not actively seeking a purchaser; it was Brenton's agent who approached with an offer to buy. Because a residence on the property was appellee's stated prime concern, the element of time for construction and completion is elevated, in this case, to the level of an indispensable term, and a reasonable time for performance cannot be implied.

Since a promise to be enforceable must be sufficiently definite as to both time and subject matter, *Dale's Service Co. Inc. v. Jones*, 96 Idaho 662, 534 P.2d 1102 (1975); *Parks v. Atlanta News Agency, Inc.*, 115 Ga.App. 842, 156 S.E.2d 137 (1967); *Greer v. Stanolind Oil & Gas Co.*, 200 F.2d 920 (10th Cir. 1952), and Brenton's promise to build a home of a certain style and an approximate size did not specify any details concerning the time within which the promise was to be performed and did not commit her in any way to complete construction within a stated time period, it cannot be enforced.

Therefore, I would hold that there was no enforceable promise to build.

### Restrictive Covenant

Appellants also argue that the deed restriction is ambiguous and, consequently, must be construed against the grantor. They further argue that the restriction merely sets a minimum size if and when a home is built and does not require that the property be left untouched by the owner until such time. With this I agree. Nevertheless, there remains the issue of whether the use to which the property is put, in the meantime, can be of a nature to preclude the eventual use clearly intended by the parties.

We should be guided by the principle that in construing restrictive covenants the primary objective is to determine the intention of the parties. 3 H. Tiffany, Real Property § 858 (3rd ed. 1939). The "restrictive covenant" in this case is not a model of clarity or legal efficacy. Nevertheless, it is an expression of the prior negotiations and agreements which have merged in the deed. The New Mexico Supreme Court, in *Hoover v. Waggoman*, 52 N.M. 371, 199 P.2d 991 (1948), declared that "effect is to be given to the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction, and the object of the parties in making the restrictions." *Id.* at 376, 199 P.2d 994. See also *Rowe v. May*, 44 N.M. 264, 101 P.2d 391 (1940). This rule is to be applied in conjunction with another which requires a restrictive covenant to be construed most strictly against the covenant so that no injunction issue unless the thing to be enjoined is plainly within the provisions of the covenant. *Hoover, supra.*

Although restrictive covenants must be construed where possible to favor free use of the property, *Montoya v. Barreras*, 81 N.M. 749, 474 P.2d 363 (1970); *Hoover, supra*, and all ambiguities strictly construed against the grantor, *Harris v. Four Hills Development Corp.*, 79 N.M. 370, 443 P.2d 863 (1968), we may not lose sight of the principles which justify valid restrictions. 3 H. Tiffany, *supra*, at 471, 472, points out:

The basis of the modern rules for enforcement of such restrictions is that one taking land with notice that it is subject

to an agreement of this character will not, in equity and good conscience, be permitted to violate its terms. . . . As stated in the leading case on the subject, "the question is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased."

Because I am persuaded that there was an oral agreement between Hyder and Brenton that the lot would be used for residential purposes, (although it is unenforceable as a contract to build), it is clear that Hyder intended, by inserting in the deed what he considered to be a restrictive covenant, to limit the use to be made of the land to erection of a single-family dwelling. Brenton acquiesced in the typewritten addition to the deed.

Appellees introduced evidence at trial concerning the "circumstances surrounding the transaction" and "the object of the parties in making the restriction." At the initial meeting with Brenton's agent, at which time the option contract was entered into, Richard Hyder discussed his objective in selling the lot; that is, that he wanted a buyer to build a large home next door to his own. Meadmore agreed that during the negotiations Hyder wanted to know what use was intended for the lot and Meadmore told him it would be used for a home for Brenton. Furthermore, at the closing meeting Brenton herself related her plans to build a thirty-three hundred square foot home as soon as her present residence was sold, and she gave a detailed description of the style of home which she was planning. Latif Hyder, father of appellee, was also present at that meeting. It is clear that every one was apprised of the existence of the intended restriction and agreed to its addition to the deed.

Some courts recognize oral agreements restricting the use of real property; others refuse to enforce them as falling within the statute of frauds. In *Thornton v. Schobe*, 79 Colo. 25, 243 P. 617 (1925), the court held the vendor's oral promise not to erect certain types of buildings on lots adjacent to those owned by plaintiffs enforceable in equity, resulting in an order to restore the property to the status quo by defendant-vendor.

Another oral agreement respecting the use of property was enforced in equity in *Lewis v. Gollner*, 129 N.Y. 227, 29 N.E. 81 (1891). There the court found existence of a restrictive covenant not to build tenements in a residential neighborhood, stating: "Neither party at all misunderstood that this was the material point of the contract." In the instant case the existence of the oral agreement was proved at trial by substantial evidence.

The typewritten addition to the deed sufficiently removes any statute of frauds objection. The provisions in the deed in this case referring to a single-family dwelling is a sufficient memorandum to render the agreement on the use of the property enforceable in equity.

Mrs. Brenton promised, and the deed restriction limits, the use of the property in such a way as will not permanently prevent compliance with the restriction. By replatting her property into one continuous lot, Brenton effectively precluded herself from building a one-family dwelling on the newly purchased portion, since the applicable city zoning regulations prohibit the erection of more than one house per lot. Albuquerque Comprehensive City Zoning Code § 10A(1) (Jan. 1, 1976). In order for Brenton to use the property in accordance with her promise, she may be required to replat the existing parcel into the original two lots, thus entailing the removal or modification of the wall and interior curbings because of city zoning wall height and setback requirements for fronting properties, unless she obtains municipal approval of the existing use and structures. She should have the opportunity to seek that approval.

To partially affirm the decision below would not limit the free use of the property in any other manner which is consistent with or would not preclude the eventual agreed-upon use of the land. Only existing or future improvements as will permanent-

ly prevent the building of a one-family home of the required size would be affected by this decision. Thus we would give effect to the rule favoring free use of the land until such time as a dwelling be build upon it, at the same time acknowledging appellees' right to insist that no permanent improvements or inconsistent use be made on or of the premises which destroy the essence of the agreement entered into by the parties. Brenton may not be required to build, but I would agree with the trial court that she may not so maintain the property that a one-family dwelling could not be constructed.

I have no disagreement regarding reasonable use of the property until such time as Mrs. Brenton constructs a single family dwelling; I respectfully dissent insofar as the majority opinion approves a use which blatantly proclaims the property as a walled back-yard appendage to the home of Meadmore and Martin facing on San Rafael Avenue S.E.