840 P.2d 595

**Bernard J. RUSANOWSKI and Dolores Rusanowski, Plaintiffs–Appellees,**

v.

**Demos GURULE and Juanita Gurule, Defendants–Appellants.**

No. 12095.

Court of Appeals of New Mexico.

Aug. 20, 1992.

Joseph A. Sommer, Karl H. Sommer, Sommer, Udall, Othmer, Hardwick & Garcia, P.A., Santa Fe, for plaintiffs-appellees.

W. Anthony Sawtell, Catron, Catron & Sawtell, P.A., Santa Fe, for defendants-appellants.

OPINION

FLORES, Judge.

The opinion filed July 10, 1992, is withdrawn and the following substituted therefor.

Bernard J. Rusanowski and Dolores Rusanowski (plaintiffs) sued Demos Gurule and Juanita Gurule (defendants) to (1) enjoin defendants from constructing a guest house on defendants' lot and to remove any portion of said structure that violates cer-

tain subdivision restrictive covenants (covenants) and (2) permanently restrain defendants from using the guest house as a residence or rental unit or as anything other than a guest house or servants' quarters. The district court entered a judgment and order in favor of plaintiffs. Defendants appeal from a portion of said judgment and order. The sole issue on appeal is whether defendants' guest house is an outbuilding within the meaning of the covenants. We reverse in part and remand.

## COVENANTS

The covenants material to this case are paragraphs 2, 3, and 6 of Article II of said covenants. These pertinent paragraphs read as follows:

2.  No structure shall be erected, altered, placed or permitted to remain on any residential lot other than one detached single family dwelling, not to exceed two stories in height, a private garage for not more than three (3) cars, one detached guest house or servants' quarters not to exceed 700 square feet in ground floor area, exclusive of open porches, and other outbuildings incidental to residential use of the lot, except as hereinafter provided.

3.  No building, including porches, shall be so located on any residential lot that any part thereof shall be nearer than twenty-five (25) feet from the front lot line or nearer than twenty (20) feet from any side street line. No building except a detached garage or other outbuilding [sic], all whereof is located sixty-five (65) feet or more from the front lot line shall be located nearer than ten (10) feet to any side lot line. The term "lot line" as used in this restriction shall mean a line marking the boundary between lands held in different ownership, without respect to lines of lots as shown on any map or plat of said subdivision.

        *      *      *      *      *      *

6.  No trailer, basement, tent, shack, garage, barn, or other out-building [sic] erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residance [sic].

## BACKGROUND

Plaintiffs and defendants own adjoining residential lots in the Sol Y Lomas, Unit 8, subdivision in Santa Fe. Both lots are subject to the covenants. In 1985 defendants built a guest house on their lot. A portion of the guest house was built within five feet, nine inches of the common property line of the parties. Plaintiffs claim that the covenants prohibit a guest house within ten feet of the side lot line and that defendants' guest house is in violation of the covenants. Defendants, in turn, contend that the covenants permit a guest house unless it is shown to be *both* within ten feet of the side lot line *and* within sixty-five feet of the front lot line. The district court ruled in favor of the plaintiffs on the ground that a portion of the guest house was constructed within ten feet of the side lot line, in violation of the covenants. The district court did not make any finding regarding the distance of the guest house from the front lot line.

## DISCUSSION

Initially, plaintiffs argue that the plain and ordinary meaning of an outbuilding is a building used in connection with, or incidental to, the main building, and considering the covenants as a whole, defendants' guest house is not an outbuilding. Plaintiffs argue that the structure built by defendants is wholly independent from the main residence. In support of their argument, plaintiffs rely mainly on the South Carolina case of *Archambault v. Sprouse*, 218 S.C. 500, 63 S.E.2d 459 (1951). In *Archambault*, the court faced the question of whether a structure containing a complete dwelling above a garage was allowed by the covenants. The covenants in question provided:

    A.  * * * No structures shall be erected, altered, placed, or permitted to remain on any residential building plot other than one detached single-family dwelling ... and a private garage for not more than two cars and storage. Build-

ings incidental to residential use may be erected.

B. * * * No building, except a detached garage or other outbuilding located on rear ¼ of lot, shall be located nearer than 5 feet to any side lot line.

\* \* \* \* \* \*

E. No trailer, basement, tent, shack, garage, barn or other outbuilding ... shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

*Id.* 63 S.E.2d at 460–61. The additional dwelling unit above the garage was entirely self-sufficient and independent from the main residence. The court held that the structure in question was not one "incidental to residential use" and that the covenants manifestly intended that only one dwelling house should be permitted on each lot. *Id.* at 462. Thus, the court held that the additional dwelling unit was not allowed by the covenants.

Plaintiffs' reliance on *Archambault* is misplaced. First, paragraph A of the *Archambault* covenants does not list a guest house as a permitted use. On the other hand, paragraph 2 of the covenants in this case expressly permits a detached guest house or servants' quarters. Second, as we discuss later, the phrase "other outbuildings" in paragraph 2, unlike the language in paragraph A of the *Archambault* covenants, refers to a guest house as a particular kind of outbuilding. Third, contrary to the covenants in *Archambault,* the covenants in this case clearly allow for more than one dwelling on each lot. These distinctions make *Archambault* inapplicable in this case.

■ Defendants rely on certain rules of statutory construction, specifically the last antecedent rule and the rule of "ejusdem generis," to interpret the covenants. However, we agree with plaintiffs that rules of statutory construction are not necessarily applicable to restrictive covenants. The general rules of construction applicable to restrictive covenants are well established. As stated in *Wilcox v. Timberon Protec-*

*tive Ass'n,* 111 N.M. 478, 806 P.2d 1068 (Ct.App.1990):

In determining whether restrictive covenants will be enforced as written, courts are guided by certain general rules of construction, which we now summarize. When the covenant is subject to ambiguity, the restrictive covenants will be resolved in favor of the free enjoyment of the property and against the restriction. Restrictions on land use will not be read into covenants by implication. Restrictive covenants must be considered reasonably, though strictly, so that "illogical, unnatural or strained construction" will not be affected. Finally, words in a restrictive covenant must be given their ordinary and intended meaning. [Citations omitted.]

*Id.* at 483, 806 P.2d at 1073 (quoting *Hyder v. Brenton,* 93 N.M. 378, 381, 600 P.2d 830, 833 (Ct.App.1979)).

■ The parties disagree over whether the restrictive covenants in this appeal are ambiguous. "Whether ambiguity exists is a question of law." *Id.* 111 N.M. at 484, 806 P.2d at 1074. The standard for determining if a document is ambiguous is whether the instrument is reasonably and fairly susceptible of different constructions. *Id.; see also Levenson v. Mobley,* 106 N.M. 399, 744 P.2d 174 (1987). To determine whether the covenants are ambiguous, we consider the document as a whole. *Sharts v. Walters,* 107 N.M. 414, 759 P.2d 201 (Ct.App.1988).

■ In support of their contention that the construction of a guest house is not in violation of the covenants, defendants generally argue that paragraph 2 of the covenants expressly permits "one detached guest house * * * and other outbuildings" and that a guest house is merely a particular type of outbuilding within the meaning of the covenants. In further support of their contention, defendants argue that paragraph 3 of the covenants permits an outbuilding to be placed within ten feet of the side lot line if it is also sixty-five feet or more from the front lot line. Plaintiffs do not disagree with defendants' argument that, under paragraph 3 of the covenants,

an outbuilding located more than sixty-five feet from the front lot line can be within ten feet of the side lot line. Thus, the dispositive issue before us is whether, under the restrictive covenants, a guest house is an outbuilding.

An outbuilding is ordinarily defined as "a building * * * separate from but accessory to a main house * * *." Webster's Third International Dictionary 1601 (1976). Giving paragraph 2 of the covenants a straightforward reading, we conclude that the phrase "other outbuildings" applies and refers back to the phrase "one detached guest house or servants' quarters," and therefore a detached guest house is an outbuilding within the meaning of paragraph 2 of the covenants. Otherwise, the reference to "other outbuildings" does not make sense. Plaintiffs argue that the phrase "other outbuildings" refers to "garage"; however, we see no reason the phrase cannot refer back to both "garage" and "guest house." Both are buildings separate from but accessory to the main house. "Restrictive covenants must be considered reasonably, though strictly, so that 'illogical, unnatural or strained construction' will not be affected." *Wilcox*, 111 N.M. at 483, 806 P.2d at 1073 (quoting *Hyder*, 93 N.M. at 381, 600 P.2d at 833).

The fact that paragraph 6 of the covenants states that "[n]o trailer, basement, tent, shack, garage, barn, or other outbuilding [sic] erected in the tract shall at any time be used as a residence" does not persuade us that a guest house is not an outbuilding. Plaintiffs argue that the trial court "implicitly concluded that a 'guest house' is not incidental to the use of the main residence, i.e., that the structure is not an outbuilding." They further claim that paragraph 6 supports this conclusion because it prohibits use of any outbuilding as a residence. Thus, we presume that plaintiffs' reasoning is that, because a guest house can be used as a residence, it must not be an outbuilding. We disagree. The language of paragraph 6, although admittedly ambiguous when read together with paragraphs 2 and 3, is not intended to contradict the terms of paragraph 2 with respect to permitted structures or the terms of paragraph 3 with respect to permitted placements. Since the prohibition against residential use applies only to structures and outbuildings inappropriate by their nature for residential use and to temporary structures, it does not constitute a flat ban on residential outbuildings that are otherwise expressly permitted.

Plaintiffs also argue that the word "outbuilding" cannot include "guest house" because it consistently appears only with the word "garage" in all three of the paragraphs at issue and that the use of the word "other" preceding "outbuildings" in paragraph 2 must be a grammatical error. Plaintiffs also correctly point out that, in paragraph 6, the phrase "other out-building [sic]" cannot refer back to the word "basement"; however, the immediately preceding phrase is "barn." We note in both paragraphs 2 and 6, the word "garage" is separated from the phrase "other outbuilding[s]" by a reference to another type of structure. Plaintiffs do not argue that the word "barn" in paragraph 6 is not a type of outbuilding; we see no reason to conclude that a grammatical error was made in paragraph 2 but that, using very similar phrasing, no error was made in paragraph 6. We conclude that, in both covenants, the phrase "other outbuildings" refers back to the immediately preceding phrase.

We determine that the covenants are ambiguous. First, all three of the covenants at issue refer to "other outbuildings" or "other outbuilding," yet the term "outbuilding" is not defined. Second, there is an ambiguity between paragraphs 2 and 6 in that paragraph 2 includes a guest house as an outbuilding and permits these types of structures to be constructed on the residential lots while paragraph 6 appears to prohibit the residential use of outbuildings. Third, there is an ambiguity between paragraphs 3 and 6 in that paragraph 3 permits an outbuilding to be placed in the residential lots, if within certain distances of the lot lines, while again, paragraph 6 appears to prohibit the residential use of outbuildings. Unless the covenants *clearly* prohibit the guest house where erected, they must be construed to allow it

**452**

to remain. Any conflict or ambiguity must be construed in favor of free use of the property and against restriction. *Lockwood v. Steiner,* 101 N.M. 783, 784, 689 P.2d 932, 933 (1984); *Cain v. Powers,* 100 N.M. 184, 186, 668 P.2d 300, 302 (1983); *Montoya v. Barreras,* 81 N.M. 749, 750, 473 P.2d 363, 364 (1970); *Hyder,* 93 N.M. at 382, 600 P.2d at 834.

 Having determined that the guest house is an outbuilding, within the meaning of the covenants, the language in paragraph 3, namely, "no building except a detached garage or other out-building [sic], all whereof is located sixty-five (65) feet or more from the front lot line shall be located nearer than ten (10) feet to any side lot line[,]" permits the guest house to be built within ten feet of the side lot line if in fact it is also sixty-five feet or more from the front lot line. To hold otherwise would be to ignore the express distinction in paragraph 3 of the covenants between buildings within sixty-five feet of the front lot line and those sixty-five feet or more from the front lot line. Common sense dictates that the purpose of this distinction in paragraph 3 is to prevent ancillary buildings along the side lot lines where they are readily visible from the street, but to permit each owner free use of his own land at the rear of the lot. The rational explanation for different treatment of outbuildings based on distance from the street is that the covenant seeks preservation of an uncluttered streetscape. This is clearly a legitimate and common-sense objective in land use regulation.

CONCLUSION

One of plaintiffs' exhibits shows that the guest house is eighty-five feet from the front lot line. Plaintiffs do not challenge that fact in their answer brief. Therefore, since the guest house is sixty-five feet or more from the front lot line, the covenants do not prohibit the construction of the guest house. Based on the foregoing, we reverse in part and remand to the district court with instructions to withdraw that portion of its order requiring removal of the guest house or any part thereof. Defendants are awarded costs on appeal.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.