991 P.2d 994 (1999)
128 N.M. 250
1999-NMCA-123
Wayne and Joanna BAKER, Husband and Wife; Dorothy Pyle; David and Sherry Moon, Husband and Wife; Edna Hammons; Joyce Thrasher; Michael Thrasher; Cathy Bilberry; Michael and Evelyn Schwartz, Husband and Wife; Elsie Stokes; Thomas and Joy Stevenson, Husband and Wife; and Delta Allen, Plaintiffs-Appellees,
v.
The BENNIE J. ADAY AND DIXIE J. ADAY REVOCABLE TRUST; Scott A. Christensen and Jane H. Christensen, Husband and Wife; Charles R. Horn and Norma J. Horn, Husband and Wife; and Kim Humble, Defendants-Appellants.
No. 19,150.
Court of Appeals of New Mexico.
September 3, 1999.
*995 David F. Richards, Van Soelen, Greig & Richards, P.A., Clovis, for Plaintiffs-Appellees.
Nancy S. Cusack, Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P., Roswell, for Defendants-Appellants.

OPINION
ARMIJO, Judge.
{1} The formal opinion filed on April 26, 1999 is hereby withdrawn and the following opinion is substituted. The Motion for Rehearing filed by Appellees is denied.
{2} Defendants appeal a district court order that enjoins them from erecting manufactured housing on more than thirty undeveloped lots in a Portales, New Mexico, subdivision. The district court issued the injunction per restrictive covenants affecting the subject lots. Of the covenants at issue, one bars the use of any "trailer" as a residence and the other prohibits "buildings" from being moved onto the property. On appeal, we are called upon to determine whether these covenants indeed pertain to the type of housing here at issue. For the reasons discussed below, we reverse the district court and lift the injunction.

I. FACTUAL AND PROCEDURAL BACKGROUND
{3} The material facts in this case are undisputed. Plaintiffs filed suit to prevent Defendants from placing manufactured, or multi-sectional, homes on lots within the Lance Subdivision of Portales, New Mexico. Of the subdivision's forty-four lots, Plaintiffs own eleven developed lots. Since 1996, Defendants Scott A. and Jane H. Christensen and Charles R. and Norma J. Horn have purchased, or have agreed to purchase, thirty-one undeveloped lots from the Bennie J. Aday and Dixie J. Aday Revocable Trust (the Aday Trust), also a defendant in this action.
{4} A pair of covenants, drafted in 1965, provided the bases for Plaintiffs' suit below. These covenants declare:
A. ... No building shall be moved in and placed on any lot subsequent to the date of this instrument.
. . . .
C. No trailer, basement, tent, shack, garage, barn, or other out-building erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.
Additional covenants limit dwellings to a minimum of 1200 square feet, exclusive of one-story open porches and garages, and require at least two bedrooms in each residence. Plaintiffs objected to and blocked the Aday Trust's proposed modification of these covenants in 1995, a proposal which would have allowed installation of mobile homes and manufactured housing and reduced the minimum square-footage requirement.
{5} One year later, in 1996, the Aday Trust began to sell its lots to the Christensens and Horns. The Christensens own and operate a business in Portales, selling mobile homes and manufactured housing. The Christensens entered into an agreement to sell two lots and a "Fleetwood Manufactured Home" to Defendant Kim Humble. The unit is comprised of individual components, which *996 are joined on site into a single housing unit. It consists of more than 1500 square feet of living spaceincluding three bedrooms, two bathrooms, a living room, dining room, utility room, denand a 322-square-foot porch or patio. The home was to be installed in compliance with Housing and Urban Development standards and regulations, and the home was to be affixed to a permanent foundation, installed in accordance with New Mexico Manufactured Housing Division requirements. See 14 NMAC 1998, § 12.2.50 (1997). After receiving a building permit from the City of Portales, Humble and the Christensens arranged for and began the on-site construction of the home. Plaintiffs then filed the lawsuit now on appeal.
{6} The district court entered judgment in Plaintiffs' favor, thereby enjoining Defendants from "plac[ing] ... any manufactured home, mobile home or trailer as a residence within the Lance Subdivision." The district court determined that the commonly accepted meaning of "trailer" in 1965 was "trailer house" or "house trailer." The court traced the development of this industry and concluded that the progression from trailer to mobile home to manufactured home was principally a change in name only, and ruled that the restrictive covenants evolved with changes in the industry. In addition, the district court concluded that Defendants' manufactured home was a "building" and was therefore restricted under the covenants from being moved in and placed upon the property. The district court also rejected Defendants' claim that Plaintiffs should be equitably estopped from enforcing the restrictions. Defendants now appeal, challenging all three aspects of the ruling below.

II. IS DEFENDANTS' MANUFACTURED HOME A "TRAILER" WITHIN THE MEANING OF THE 1965 COVENANT?
{7} The first question presented is whether Defendants' manufactured home is prohibited by the covenant's provision that "[n]o trailer, basement, tent, shack, garage, barn, or other outbuilding" shall be used as a residence within the subdivision. This language clearly manifests an intent to limit land use and, as such, ought to be enforced as written. See Wilcox v. Timberon Protective Ass'n, 111 N.M. 478, 484, 806 P.2d 1068, 1074 (Ct.App.1990). In giving particularized and legal force to this manifest intent, we construe the language strictly "in favor of the free enjoyment of the property and against restrictions," Heath v. Parker, 93 N.M. 680, 681, 604 P.2d 818, 819 (1980), but not so strictly as "to create an illogical, unnatural, or strained construction," Hill v. Community of Damien of Molokai, 1996-NMSC-008, ¶ 6, 121 N.M. 353, 911 P.2d 861. Furthermore, we will not read restrictions into covenants by implication. See id.
{8} The parties have focused their arguments upon the covenant's use of the term "trailer." Toward that end, they rely on various New Mexico cases construing the term. Compare Heath, 93 N.M. at 681-82, 604 P.2d at 819-20 (holding that prohibition of "trailers" did not implicate "double-wide mobile homes") with Cain v. Powers, 100 N.M. 184, 187, 668 P.2d 300, 303 (1983) (limiting Heath to its facts and holding that prohibition of "trailer houses or modular homes" implicated "mobile homes") and Wilcox, 111 N.M. at 481, 806 P.2d at 1071 (holding covenant specifically prohibiting "mobile home[s]" implicated mobile homes placed upon a permanent foundation). However, while relevant, these authorities, standing independently, do not control. Any attempt to ascertain whether the type of housing at issue in the present case violates the covenant must attend first and foremost to the facts and circumstances presented. See Heath, 93 N.M. at 682, 604 P.2d at 820.
{9} The parties fail to wed the legal analyses of the cases they assert sufficiently to the facts present in the instant appeal. While the foregoing authorities indicate that covenantal language prohibiting "trailers" likewise prohibits "mobile homes," whether installed upon a foundation or not, none addresses whether a covenant prohibiting "trailers" likewise prohibits manufactured homes, the particular type of housing at issue. We note that while the district court ruled that manufactured housing is synonymous with the terms "mobile home" and "trailer," we are not bound by this conclusion. *997 The parties stipulated to all the facts in this case: the district court's ruling, therefore, is a legal conclusion, which we review de novo.
{10} The covenant was drafted in 1965 and prohibits, inter alia, "trailers" from being used as housing in the Lance Subdivision; however, it makes no mention of "manufactured housing." Upon its review, the district court concluded that manufactured housing "differs only in nomenclature from a `trailer[.]'" We do not agree; indeed, upon our independent review of the stipulated evidence, we conclude that Defendants' home was something far different from a "trailer."
{11} Defendants introduced photographic evidence that showed what the manufactured home would have looked like upon completion. The district court's findings reflect what is shown in this exhibit; namely, the home was to sit upon a permanent foundation and consist of over 1500 square feet of living space, including three bedrooms, two bathrooms, a living room, dining room, utility room and den, as well as a 322-square-foot porch or patio. Additionally, the district court found that the home would have been anchored at the site by ribbon footings, piers, a block wall, and a retaining wall. The district court further found that once the Christensens completed the permanent installation of the home, they and Humble intended to build a brick skirting around the home and construct a driveway. The evidence also indicated that the utilities would have been installed as they would have been in any site-built home. Upon such facts, we conclude that it is highly improbable that such a residence in 1965 would have been considered a "trailer." Cf. Kenneth K. Barr, The Right to Sell the "Im" Mobile Manufactured Home in Its Rent Controlled Space in the "Im" Mobile Home Park: Valid Regulation or Unconstitutional Taking?, 24 Urb. Law. 157, 162-69 (1992) (tracing evolution of "trailer" industry and noting, inter alia, that the average size of a trailer in 1966 was 720 square feet). Indeed, this particular home is so structurally integrated to the site and so dissimilar from a mobile home or trailer of that earlier era that it cannot fit within any plain definition of those terms, especially as they were likely understood in 1965.
{12} Courts from various jurisdictions have reached similar conclusions when considering whether a restrictive covenant against trailer homes also prohibits manufactured or multi-sectional housing. See Tucker v. Wolfe, 968 P.2d 179, 183 (Colo.Ct.App.1998) (holding "sense of permanency and residential character attributable to ... manufactured housing distinguishes them from the commonly understood meaning of trailer houses"); Kennedy v. Classic Designs, Inc., 239 Kan. 540, 722 P.2d 504, 510 (1986) (noting "modular construction is a modern building technique" that does not resemble "the usual concept of the mobile home"); Kinchen v. Layton, 457 So.2d 343, 347 (Miss.1984) (holding manufactured home was not a trailer, mobile home, or temporary structure in violation of restrictive covenant and that "[s]tick-by-stick built structures of same basic design and functional utility would not be prohibited under . . . covenant[ ]"); see also Yeager v. Cassidy, 20 Ohio Misc. 251, 253 N.E.2d 320, 323 (1969) (noting pre-built housing may be more attractive in appearance and design than conventional site-built housing); Werner v. Sofios Constr. Co., 176 N.E.2d 870, 871 (Ohio 1961) (stating that there is "nothing sacred about on the site construction" and that "[u]se of the same workmen to shop build components very often results in better finished quality"); see generally Nora A. Uehlein, Annotation, What is "Temporary" Building or Structure Within Meaning of Restrictive Covenant, 49 A.L.R.4th 1018, 1029 § 4 (1986) (discussing appearance of structure in relation to conventional buildings in immediately surrounding area as a factor in determining whether structure was of temporary character).
{13} We again emphasize that courts must apply covenantal language to challenged land-use practices in a particularized and fact-specific manner; in performing such analyses, courts are governed by the language of the dedicating instrument and the details of the structure or land-use practice involved. Applying this standard, we conclude that Defendants' manufactured *998 housing is not a "trailer" and is therefore not prohibited.

III. IS DEFENDANTS' MANUFACTURED HOME A "BUILDING" WITHIN THE MEANING OF THE 1965 COVENANT?
{14} The 1965 covenant also provides: "No building shall be moved in and placed on any lot subsequent to the date of this instrument." The second question therefore presented is whether Defendants' manufactured home is a "building" that cannot be "moved in and placed on [their] lot[.]" New Mexico courts have not previously had the opportunity to construe "building" in this context, and despite their claim that all pertinent cases from outside New Mexico support their position, Plaintiffs do not refer us to any authority directly addressing this question. Instead, they argue that the covenant's plain intent is to require that all buildings be constructed on-site. We are not persuaded by this argument.
{15} As a preliminary matter, we note that the term "building" does not have a "universal, inflexible meaning which will apply in all cases." Lawrence v. Harding, 225 Ga. 148, 166 S.E.2d 336, 337 (1969) (citation and internal quotation marks omitted). Instead, we read the term according to the rules of construction applicable to covenantal language; that is, we construe the term in light of the particular facts of the instant case and strictly in favor of the free enjoyment of the subject property. See id.; see also Heath, 93 N.M. at 681, 604 P.2d at 819.
{16} In Kennedy, 722 P.2d at 506, a restrictive covenant provided that "no building shall be moved into" the subject parcel of land. As in the present appeal, appellants had been enjoined from erecting a multi-sectional home on a lot. The Kansas Supreme Court, however, reversed the district court and lifted the injunction, concluding that the term "building" should not be read so broadly as to include appellants' multi-sectional home.
[U]se of the word "building" clearly imports some sort of assembled or completed structure, rather than various component parts that are intended to be attached together to comprise a finished product. We think it is clear that the restrictive covenant relied upon by appellees contemplated a complete building rather than a method of construction.
Id. at 509. In this vein, the district court concluded that the home in question "in no way resembles the usual concept of the mobile home[.]" Id. at 510.
{17} In the present case, the home was so structurally incomplete prior to installation that it could not fairly have been characterized as a "building" until it was fully integrated into the subject lot. We further hold that it is unlikely the drafters of the 1965 covenants contemplated the method of construction involved in erecting Defendants' home; indeed, there was no evidence presented below that could satisfactorily support such a conclusion. Accordingly, we hold that Defendants' installation of the manufactured home at issue does not violate the covenant's prohibition against the importation of any "building." We therefore reverse the district court and lift its injunction against Defendants.

IV. CONCLUSION
{18} For the reasons set forth above, we reverse the judgment of the district court, holding that the home to be constructed in this case did not violate the covenants invoked. In light of the grounds upon which we base our decision, we need not address Defendants' estoppel claims.
{19} IT IS SO ORDERED.
DONNELLY and HARTZ, JJ., concur.