**Certiorari Denied, July 28, 2011, No. 33,089**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-086**

**Filing Date: May 25, 2011**

**Docket No. 29,804**

**FRANK SABATINI,**

   **Plaintiff-Appellee/Cross-Appellant,**

**v.**

**CERVANTES ROYBAL and IRENE ROYBAL,**

   **Defendants-Appellants/Cross-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Cassutt, Hays & Friedman, P.A.
John P. Hays
Santa Fe, NM

for Appellee

Sommer, Udall, Sutin, Hardwick, & Hyatt, PA
Kurt A. Sommer
Jack N. Hardwick
Candice Lee
Santa Fe, NM

William H. Lazar
Tesuque, NM

for Appellants

**OPINION**

**BUSTAMANTE, Judge.**

1

**{1}**     Appellants Cervantes and Irene Roybal (Roybals) appeal the district court's grant of an injunction requiring them to reduce in size or eliminate a garage located on their property. Appellee Sabatini cross appeals, claiming that the maximum size permitted by the court's order is still too large.  At issue in this case is whether the district court erred in construing a restrictive covenant allowing a "private garage" to mean only those garages capable of holding no more than a reasonable number of vehicles for the use of a single family. Because the district court incorrectly applied our standards for construing terms in restrictive covenants, we reverse.

## I.     BACKGROUND

**{2}**     The Roybals own a 4.618-acre lot in the DeVargas Development Company Subdivision No. 2 in Santa Fe, New Mexico.  The property, like most or all of the others in the subdivision, is subject to restrictive covenants designed to maintain certain aspects of the character of the subdivision.  One of the covenants requires that

> [N]o building whatsoever except a private dwelling house, guest house and a private garage shall be erected, placed or permitted on said premises or any part thereof, and said dwelling house . . . shall cost and be reasonably worth not less than Ten Thousand ($10,000.00) Dollars, . . . and said dwelling house and private garage and guest house, if one is built, shall be in the style or form or appearance known as the Old Santa Fe or Pueblo Spanish style architecture.

The deed containing these covenants was filed in 1947.

**{3}**     Mr. Roybal, who collects cars, decided to purchase the property in part because it had enough space for him to build a garage to house his collection.  In September 2007 the Roybals began construction on a 50 x 110 foot garage designed to house the cars.  The front of the structure consisted of three large garage doors capable of admitting two cars side-by-side and one taller, more narrow door allowing entrance into a bay containing a hydraulic lift.  A small room used as an office was located behind the lift.  Mr. Roybal testified that the exterior of the garage was designed to match the existing house and to conform to the Old Santa Fe style.

**{4}**     The property immediately to the west of the Roybals' property is owned by Sabatini. When Sabatini learned of the construction taking place on the Roybals' property, he filed a complaint for declaratory judgment and injunctive relief to stop the construction, which he alleged violated the restrictive covenants.  After discovery, both the Roybals and Sabatini filed motions for summary judgment on the issue of whether the garage qualified as a "private garage" within the meaning of the restrictive covenants.  The district court ruled for Sabatini, concluding that "private garage" unambiguously meant "a structure which is able to house a reasonable number of vehicles for use by the occupants of the private, single-family residence."  The court then found that the Roybals' garage was not a "private garage"

under that definition. After a bench trial regarding remedies and defenses, the district court ruled that the Roybals were required to either reduce in size or demolish the garage.

## II.    DISCUSSION

{5}    The Roybals argue that (1) the district court incorrectly determined the meaning of the term "private garage" in the restrictive covenants, (2) summary judgment was improper because there were disputed issues of material fact, and (3) the district court abused its discretion by ordering that the garage be razed or reduced in size. In his cross appeal, Sabatini argues that the district court erroneously held that reducing the size of the garage to a 3,000 square-foot, eight-car garage would bring it into compliance with the restrictive covenants. Because we hold that the district court incorrectly concluded that the Roybals' garage was not a "private garage," we do not discuss the remainder of the arguments.

{6}    The district court interpreted the term "private garage" in the restrictive covenants to unambiguously mean "a structure which is able to house a reasonable number of vehicles for use by the occupants of the private, single-family residence." The Roybals claim that this was error. Sabatini maintains that the district court correctly determined that the garage was not a "private garage," but instead a "car showroom." Whether a district court has correctly construed a restrictive covenant is a question of law which we review de novo. *See Smart v. Carpenter*, 2005-NMCA-056, ¶¶ 6-7, 139 N.M. 524, 134 P.3d 811.

{7}    "The [district] court has a duty to enforce the expressed intentions as set forth in covenants when they are unambiguous." *Aragon v. Brown*, 2003-NMCA-126, ¶ 11, 134 N.M. 459, 78 P.3d 913. When the expressed intentions are ambiguous, we apply our rules of construction of restrictive covenants. *See Wilcox v. Timberon Protective Ass'n*, 111 N.M. 478, 483, 806 P.2d 1068, 1073 (Ct. App. 1990). Failure to apply the rules of construction is an error of law. *See id.* at 485, 806 P.2d at 1075.

### A.    "Private Garage" Is Ambiguous

{8}    Our first task is to determine if the phrase "private garage" is ambiguous. Ambiguity exists when a word or phrase is susceptible to two or more meanings. *Id.* at 484, 806 P.2d at 1074. "Whether ambiguity exists is a question of law." *Id.*; *see Rusanowski v. Gurule*, 114 N.M. 448, 450, 840 P.2d 595, 597 (Ct. App. 1992) (internal quotation marks and citation omitted). In deciding whether a covenant is ambiguous, we look at the document as a whole. *Id.*

{9}    Our cases have found even the most innocuous terms in restrictive covenants to be ambiguous. For example, our Supreme Court found the word "family" ambiguous when it was not defined in the restrictive covenant and "nothing in the covenant suggest[ed] that it was the intent of the framers to limit the term to a discrete family unit comprised only of individuals related by blood or by law." *Hill v. Cmty. of Damien of Molokai*, 1996-NMSC-008, ¶ 13, 121 N.M. 353, 911 P.2d 861. Resolving the term in favor of free use of property,

3

the Court determined that members of a family need not be related. *Id.* In *Rusanowski*, this Court determined that the term "outbuilding" was ambiguous because it was not defined and because it was used inconsistently within the covenants. *See* 114 N.M. at 451, 840 P.2d at 598.

{10}    Courts of other states have considered whether the term "private garage" was ambiguous. In *Johnson v. Dawson*, the Indiana Court of Appeals determined that the phrase "private garage," by itself, was ambiguous with respect to the size and arrangement of garages. 856 N.E.2d 769, 773 (Ind. Ct. App. 2006). However, what *was* unambiguous in *Johnson* was the accompanying language limiting the size of the garage to "not more than three cars." *Id.* ("[N]ot more than three means not more than three."). Another court, apparently finding no ambiguity, has defined "private garage" as "a structure or building kept for the storage of motorcars by the owners, or certain other persons, but not for the general public." *Woods v. Kiersky*, 14 S.W.2d 825, 828 (Tex. Comm'n App. 1929).

{11}    We conclude that the term "private garage" is ambiguous. As in *Hill* and *Rusanowski*, the covenants here do not define the term. The term is susceptible to at least two meanings. The Roybals proffer a dictionary definition for garage: "a building or indoor area for parking or storing motor vehicles." Dictionaries have also defined a garage as "a repair shop for automotive vehicles." *Webster's Third New Int'l Dictionary* 935 (3d ed. 1986). Unlike *Johnson*, the covenants under consideration here do not include an explicit limitation on the size of the garage, and the term by itself is ambiguous with respect to size. Examination of the entire document does not resolve this ambiguity. Finally, we note that we are not aware of—and the parties do not cite—any case, dictionary, or source of any kind that has concluded that the meaning of "garage" includes the restrictions adopted by the district court below. Were we to assume that the district court's definition was plausible, the plethora of definitions not containing restrictions would force us to conclude that the term was ambiguous.

**B.    "Private Garage" Contains No Size Limitations**

{12}    Because the term "private garage" is ambiguous with regard to size, we must apply our rules of interpretation to determine what size restrictions, if any, apply. Our cases set forth four such rules. We must give the words in a restrictive covenant their ordinary and intended meaning. *See Hill*, 1996-NMSC-008, ¶ 6. "[W]e construe the language strictly in favor of the free enjoyment of the property and against restrictions, but not so strictly as to create an illogical, unnatural, or strained construction." *Baker v. Bennie J. Aday & Dixie J. Aday Revocable Trust*, 1999-NMCA-123, ¶ 7, 128 N.M. 250, 991 P.2d 994 (internal quotation marks and citation omitted). Finally, "we will not read restrictions into covenants by implication." *Id.*

{13}    In this case, each of our four rules for construing restrictive covenants compels us to conclude that the phrase "private garage" contains no size limitation. First, as discussed above, the ordinary meaning of "garage" does not contain restrictions, but instead appears

4

to refer to a structure or space whose purpose is to store vehicles. Second, reading a size limitation into the term would be inconsistent with our rule favoring the free use of land. Third, we do not believe that the failure to include a size limitation creates an unnatural or strained construction—to the contrary, Sabatini's attempts to avoid using the term "garage" have been strained and unnatural. Fourth, the district court's definition reads reasonableness requirements into the term "private garage" by implication, a practice we have repeatedly cautioned against. We also note that the covenant in question contains an example of restrictive language: it assigns a lower bound to the value of any residence constructed on the land. This not only demonstrates that the drafters were capable of adding limiting language, but also that their intent was not that the buildings be limited in size, but that they be of at least a certain quality or value.

**{14}** The meaning of "private garage" should thus be governed by its ordinary meaning, absent any implied restrictions. We hold that the meaning of that term here is a structure or area whose essential purpose is the storage of motor vehicles by the owners and not by the general public. The question is not whether the Roybals' garage might be described by some other term, but whether the garage fits within the meaning we have described. Thus, the fact that it could be referred to as a warehouse, a showroom, or any other term is irrelevant.

**{15}** This is not to say that a residence could be turned into a garage by parking a car in a bedroom. What is important is the essential purpose of the structure. *See Hill*, 1996-NMSC-008, ¶ 11 (examining the essential purpose of a group home to determine if the operation of a group home was residential use); *Woods*, 14 S.W.2d at 828 (reasoning that whether a structure was a residence or a private garage depended on its essential character and dominant features). Here, the garage was designed primarily to store the Roybals' vehicles. The single small office did not change that essential purpose. Sabatini's attempts to refer to the garage by other terms inevitably sounded strained and unnatural because terms such as "structure," "warehouse," or "showroom," simply ignore or attempt to hide the garage's essential purpose—the storage of vehicles.

## C.     The Roybals' Garage Is a "Private Garage"

**{16}** The facts about the Roybals' garage are not in dispute. Furthermore, for the purposes of the restrictive covenants at issue here, we have determined the meaning of "private garage" as a matter of law. The application of the law to the undisputed facts is a legal conclusion that we review de novo. *See Baker*, 1999-NMCA-123, ¶ 9. The essential purpose of the garage here is to store the Roybals' collection of vehicles. The fact that a small portion of the garage contained a room for use as an office does not change the essential purpose of the structure. There was no evidence that the garage would be made available to the general public. Accordingly, we hold that the garage is a "private garage" within the meaning of the restrictive covenants.

## III.     CONCLUSION

**{17}** For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**{18}    IT IS SO ORDERED.**

 

 

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**MICHAEL E. VIGIL, Judge**

**Topic Index for** *Sabatini v. Roybal***, Docket No. 29,804**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CN** | **CONTRACTS** |
| CN-AM | Ambiguous Contracts |
| CN-IN | Interpretation |
| CN-RC | Restrictive Covenants |
| | |
| **PR** | **PROPERTY** |
| PR-CN | Covenants |
| PR-RC | Restrictive Covenants |