This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**KEITH RANDALL, d/b/a/**
**OUTLAW GARAGE, LLC,**

     Petitioner-Appellant,

v.                                 **NO. 31,492**

**BETH PITTMAN, WILLIAM PITTMAN,**
**LOIS and RICHARD ABRAHAM,**
**ROBERT R. FAURIE, ABBY ROSSMAN,**
**MARC ROSSMAN, deceased, and WILLIAM HOPPING,**

     Respondents-Appellees,

and

**TAOS COUNTY BOARD OF**
**COUNTY COMMISSIONERS,**

     Appellee-Cross Petitioner.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Paternoster, District Judge**

Anthony G. Lopez
Taos, NM

for Petitioner-Appellant

Mark Hirsch
Albuquerque, NM

for Respondents-Appellees

Robert J. Malone, Assistant Taos County Attorney
Taos, NM

for Appellee-Cross Petitioner

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1}   This appeal raises issues regarding the scope and standard of review that a district court applies to an administrative appeal. Plaintiff Keith Randall, d/b/a Outlaw Garage, LLC (Plaintiff) seeks review of the district court's ruling reversing the Taos County Board of County Commissioners' (the Board) decision that Plaintiff's restorative automobile garage qualifies for a "cottage industry" license. Because the district court engaged in fact-finding functions and otherwise failed to follow the limited review of an appellate court, we reverse the district court and affirm the Board's decision to grant Plaintiff a "cottage industry" license.

## BACKGROUND

{2}   Plaintiff owned the "New Mexico Classic Automobile Shop" in Taos for eighteen years and retired in 2006. During that time he acquired a substantial number

of automobiles, motorcycles, and specialty vehicles. Upon his retirement, Plaintiff purchased twenty acres of land to build his home with the goal of building a garage large enough to maintain, repair, and restore the vehicles he had accumulated. He then applied for and was granted a building permit for an 8,750 square-foot "home garage" for his personal vehicles. Taos County had full knowledge that Plaintiff intended to use his garage to park and restore his personal vehicles.

{3} Plaintiff constructed his garage 100 feet from his house on the southern portion of his property. The size, materials, and location of his garage complied fully with applicable land use regulations. Although Plaintiff's home garage was premised on his personal use, two days after Plaintiff was issued a residential building permit, he formed the limited liability company named Outlaw Garage, LLC. Plaintiff explained that he formed the limited liability company for tax purposes in order to purchase automobile parts.

{4} Plaintiff then decided that he would like to restore other vehicles for third parties and submitted an application for a business license for an automotive repair business in his garage. The Taos County Planning Commission (Planning Commission) denied his application for a business license. Plaintiff then applied for a "cottage industry" business license to restore, rather than repair, vehicles. The Planning Commission eventually granted Plaintiff's cottage industry application, but

2

imposed twenty-four conditions on the business license. Plaintiff and his neighbors (Neighbors) both appealed to the Board—with Neighbors appealing the issuance of the cottage industry license and Plaintiff appealing the imposition of the twenty-four conditions for the license. Following a hearing, the Board determined that Plaintiff's application for his garage met the definition of "cottage industry" as defined in the Taos County Land Use Regulations (Regulations), revoked the twenty-four conditions imposed by the Planning Commission, and granted Plaintiff a cottage industry license. Neighbors then appealed the Board's decision to the district court. At issue was whether Plaintiff satisfied the elements of a "cottage industry."

{5}     The Regulations define a "cottage industry" as follows:

>  a small, individually owned business or concern located in a [g]enerally residential area which functions without altering the residential character of the neighborhood, and which does not create any significant impacts on the public health, safety, and general welfare, and which employs no more than five persons not members of the immediate family . . . . Additionally, the cottage industry is customarily carried on as an accessory use of a dwelling unit, is carried on in a dwelling unit or in a building or other structure which is accessory to a dwelling unit and clearly incidental and secondary to the use of the dwelling for residential purposes.

The district court found that the Board's decision regarding the general definitional elements of a "cottage industry" was supported by substantial evidence and was not otherwise contrary to law. However, the district court ruled that the Board's decision

was nonetheless "contrary to law and logic" because substantial evidence did not support a finding that Plaintiff's garage was used as an accessory to his residence and for purposes incidental and secondary to the residential use of the dwelling. The district court found that the Board "acted arbitrarily and capriciously in approving the proposed business as a cottage industry," and reversed its determination. In its ruling, the district court did not reference any specific facts in evidence or provide citations to applicable law. Plaintiff timely appealed to this Court by way of a petition for writ of certiorari, which was granted.

**STANDARD OF REVIEW**

{6} In reviewing an administrative decision of the Board, we apply a whole-record standard of review. *Martinez v. N.M. State Eng'r Office*, 2000-NMCA-074, ¶ 31, 129 N.M. 413, 9 P.3d 657. The district court may reverse an administrative decision only if it determines that the administrative entity acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or entity did not act in accordance with the law. *Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 10, 135 N.M. 30, 84 P.3d 78. "Like the district court, we independently review the entire record of the administrative hearing to determine whether the Board's decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *Martinez*, 2000-

4

NMCA-074, ¶ 31; *see Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶¶ 16-17, 133 N.M. 97, 61 P.3d 806 ("[W]e will conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal.").

{7}     An administrative ruling is arbitrary and capricious if it is "unreasonable or without a rational basis, when viewed in light of the whole record," and we must avoid substituting our own judgment for that of the agency. *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 17, 137 N.M. 161, 108 P.3d 1019 (internal quotation marks and citation omitted).  As such, we view the evidence in the light most favorable to the Board's decision, although we do not completely disregard conflicting evidence. *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 17, 125 N.M. 401, 962 P.2d 1236 (explaining that appellate courts review an agency's findings by examining the entire record, but must affirm a decision if it is supported by substantial evidence); *Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 114, 835 P.2d 819, 830 (1992).  If we were fact-finders in this case, we might come to a different conclusion than the Board; but in our appellate review we may only evaluate whether the record supports the result reached, not whether a different result could have been reached. *See Snyder Ranches,*

*Inc. v. Oil Conservation Comm'n,* 110 N.M. 637, 639, 798 P.2d 587, 589 (1990). "Substantial evidence supporting administrative agency action is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Oil Transp. Co. v. N.M. State Corp. Comm'n,* 110 N.M. 568, 571, 798 P.2d 169, 172 (1990). The burden is on the party challenging the agency decision to demonstrate grounds for reversal. *Regents of Univ. of N.M.*, 1998-NMSC-020, ¶ 17; *Embudo Canyon Neighborhood Ass'n v. City of Albuquerque*, 1998-NMCA-171, ¶ 8, 126 N.M. 327, 968 P.2d 1190 ("Decisions of a municipality are presumably valid and the burden of proving otherwise rests upon a party seeking to void such decision."), *superceded by statute on other grounds as stated in C.F.T. Dev., LLC v. Bd. of Cnty. Comm'rs of Torrance Cnty.*, 2001-NMCA-069, 130 N.M. 775, 32 P.3d 784. We review questions of the Board's and the district court's interpretations of the law de novo. *Gallup Westside Dev.*, 2004-NMCA-010, ¶ 11. The district court also identified its limited appellate role, one that was consistent with these standards.

**DISCUSSION**

{8}      Plaintiff contends on appeal that substantial evidence supported the Board's finding that his garage met the definition of a "cottage industry" and the district court impermissibly substituted its judgment of what a "cottage industry" should be over that of the Board. In reversing the Board's decision as "illogical," the district court

6

appears to have made several different conclusions: (1) that substantial evidence did not support a finding that Plaintiff's garage was used as an accessory to a dwelling unit and for purposes incidental and secondary to the residential use of the dwelling; (2) that on this record, the Board's decision was contrary to law and logic; and (3) that due to the illogical determination made by the Board, it acted arbitrarily and capriciously when it approved Plaintiff's proposed cottage industry license. Unfortunately, the district court did not explain how its own standard of "logic" or "logical" applied within the recognized appellate standard of review, thereby negating the evidence supporting the Board's decision regarding the "cottage industry" provision of the Regulations. As a result, the contested issue in this case is whether the use of Plaintiff's garage for his limited automobile restoration business is permissible under the requirements in the Regulations that allow "an accessory use of a dwelling unit" in an accessory "building or other structure" which is "clearly incidental and secondary to the use of the dwelling for residential purposes."

{9}    The Regulations mandate that the occupant's primary use of his dwelling unit be residential, but they do permit limited commercial use of a residential property if it is both customary and clearly incidental. When read as a whole, the "cottage industry" provision permits residents to use their residential property in a manner that does not alter the residential character of the neighborhood, even where the use be for

7

business and commercial purposes. The Regulations do not provide any specific guidance regarding the types of commercial activities and cottage industry businesses that are permitted to function as "accessory," "incidental," and "secondary." As a result, we begin our analysis by looking at the plain language of the Regulations. *State v. Johnson*, 2001-NMSC-001, ¶ 6, 130 N.M. 6, 15 P.3d 1233. In interpreting a regulation, we give words their ordinary meaning, without adding terms the enacting body did not include. *Smith v. Bernalillo Cnty.*, 2005-NMSC-012, ¶ 19, 137 N.M. 280, 110 P.3d 496. Further, we must "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." *TBCH, Inc. v. City of Albuquerque*, 117 N.M. 569, 572, 874 P.2d 30, 33 (Ct. App. 1994). The aim of judicial construction is to ascertain a reasonable interpretation of the terms that were employed by the legislative body. *See Smith*, 2005-NMSC-012, ¶ 18 ("[W]hen several sections of a statute are involved, they must be read together so that all parts are given effect." (internal quotation marks and citation omitted)).

{10} This Court has previously defined an accessory, incidental, or auxiliary use as a use "which is dependent on or pertains to the principal or main use, and which may be considered an integral part of the primary use." *City of Las Cruces v. Huerta*, 102 N.M. 182, 184, 692 P.2d 1331, 1333 (Ct. App. 1984) (internal quotation marks and citation omitted). The word "customary" is defined in Webster's Third New

8

International Dictionary as "agreeing with custom: established by custom: commonly practiced, used, or observed." *Webster's Third New Int'l Dictionary* (unabridged) 559 (1993). Thus, a customary accessory use of a residence is a use so necessary or commonly to be expected that it cannot be thought that the zoning resolution was intended to prevent it. Using these definitions as guidance, we first address the district court's finding that, as a matter of law, Plaintiff's proposed automobile restoration business cannot be characterized as a "cottage industry" because it is not an activity that is customarily conducted in a building or other structure that is "accessory to a dwelling unit."

{11}   It is undisputed that one of the usual and customary uses of a residential property is to keep and store the occupant's vehicles, including activities to work on and make occasional minor repairs thereon in a driveway or detached garage. *See Sabatini v. Roybal*, 2011-NMCA-086, ¶ 14, 150 N.M. 478, 261 P.3d 1110, *cert. denied*, 2011-NMCERT-007, 268 P.3d 46 (defining "private garage" as "a structure or area whose essential purpose is the storage of motor vehicles by the owners and not by the general public"); *see also Webster's Third New Int'l Dictionary, supra* 935 (defining a "garage" as "a repair shop for automotive vehicles."). Moreover, it is without question that, under our recognized customs and traditions, the use of one's home includes more than simple occupancy of the house and grounds for food and

9

shelter. It also includes many other activities by the occupants undertaken for private religious, educational, cultural, and recreational personal purposes. Pursuit of a hobby is clearly one of these recognized activities. Thus, Plaintiff's hobby of collecting and restoring his personal vehicles at his residence and in his garage is the type of residential activity recognized and allowed by the customs and traditions of our society.

{12}     The words "customarily carried on as an accessory use of a dwelling unit" act to designate the class of activity a person customarily does in or about their residence, not the reasonableness of an activity under a particular set of facts. *See Smith*, 2005-NMSC-012, ¶ 26 ("Based on the plain language of the ordinance and the judicial treatment of the term 'customarily incidental' in other jurisdictions, we are not convinced that the ordinance, in leaving 'customarily incidental' undefined, implicitly requires or justifies an independent determination of reasonableness."). They do not limit the use to the identical activity chosen by one's neighbors. Plaintiff's automobile restoration hobby may be undesirable to Neighbors, but it is not prohibited in Taos County by any regulation, ordinance, statute, or zoning restriction. Plaintiff specifically identified for the Board numerous automobile repair and restoration shops that are located on private residences or in residential areas throughout Taos County. While it is unclear from the record which of these automobile shops, if any, were

designated as a "cottage industry," the record clearly indicates that Taos County does not traditionally exclude this type of automotive repair activity from residential areas. Neighbors have not provided any evidence to the contrary. As such, we agree with the district court that Taos County allows automotive repair and restoration activities and businesses to exist in residential areas without altering the residential character of the neighborhood and without creating any significant impacts on the public health, safety, and general welfare. This type of automotive activity has been commonly practiced, used, or observed in residential areas throughout Taos County and is not contrary to its customary character.

{13}   Our holding that an automobile restoration activity is a permissible use in a residential neighborhood brings us to the second issue of whether, under the facts of this case, substantial evidence supported the Board's determination that Plaintiff's proposed automobile restoration business constituted a "cottage industry." To answer this question, we must look at whether Plaintiff's proposed use of his garage was incidental and secondary to the use of his dwelling unit for residential purposes. In arguing that Plaintiff's proposed business was not clearly incidental and secondary to the use of his residence, Neighbors have focused solely on the size of Plaintiff's garage and the equipment contained inside. Neighbors have asserted that a backyard "shade tree" mechanic type operation is the only type of automotive "cottage

11

industry" activity contemplated as appropriate under the Regulations. Neighbors' argument is not well taken. The Regulations specifically permit the construction of a residential garage up to the maximum size of 9,000 square feet. No evidence was offered to establish any restriction on the equipment located in Plaintiff's garage. Notably, Plaintiff's proposed "cottage industry" would not require any structural change to Plaintiff's property or the neighborhood and would only involve activities that Plaintiff was already legally undertaking when he worked on restoring his own personal vehicles in his existing garage.

{14}    Our review of the record as a whole indicates that substantial evidence supported the Board's finding that Plaintiff's proposed business was the type of incidental activity intended to be permitted as a "cottage industry" on residential land. Consistent with the use of his residence and in pursuit of his established vehicle restoration hobby, Plaintiff already possessed and used the equipment necessary for a vehicle restoration business. In addition, we see no evidence in the record indicating that Plaintiff would discontinue the restoration of his personal vehicles if granted a "cottage industry" license. To the contrary, Plaintiff indicated that he only intended to "go back into doing a little bit of [other] work, enough to survive and pay the bills."

{15}    The Board, in this case, did more than simply interpret its Regulations. It held an evidentiary hearing where interested parties had the opportunity to present evidence

12

and be heard. It visited the Plaintiff's property as part of the hearing process. The Board also reviewed its administrative record, including documentation and information pertinent to the nature and use of Plaintiff's garage and its effect on the neighborhood. Thus, the Board addressed the issues before it in a fact-based, quasi-judicial proceeding. *See Southworth v. Santa Fe Servs., Inc.*, 1998-NMCA-109, ¶ 14, 125 N.M. 489, 963 P.2d 566 (stating that an administrative agency acts in its quasi-judicial role when it investigates or ascertains the existence of facts, holds hearings, and draws conclusions from them). Regardless of whether the district court might have decided the merits differently or might have weighed the testimony differently, it was bound to uphold the Board's quasi-judicial findings if they were supported by substantial evidence. *Family Dental Ctr. v. N.M. Bd. of Dentistry*, 97 N.M. 464, 466, 641 P.2d 495, 497 (1982).

{16}     Substantial evidence in the record supported the Board's determination that vehicle restoration fits within the type of activity customarily associated with a dwelling unit and that the limited use of Plaintiff's garage to restore other automobiles would be incidental and secondary to the residential use of his main dwelling unit and the existing garage. Although the record may suggest that a contrary conclusion might have been possible based upon the Board's discretion to weigh the evidence and testimony received, the district court may not simply substitute its judgment for that

13

of the agency. *Id.* at 465, 641 P.2d at 496. A reviewing court should not lightly find an abuse of discretion where a zoning authority refuses to restrict an owner's use of his property upon the complaint of persons seeking to benefit their own property by imposing restrictions on another's use of his property. The Board's interpretation of "cottage industry" is entitled to great deference, *see Coe v. City of Albuquerque*, 76 N.M. 771, 774, 418 P.2d 545, 547 (1966), and its decision is neither irrational nor lacking the required support of substantial evidence. We must, therefore, reverse the judgment of the district court if it is contrary to law.

**{17}** The district court also determined that the Board's decision was contrary to law. In doing so, the court failed to cite to any authority and appears to base this conclusion on its "logical" determination of the facts. Without authority being provided by the district court or Neighbors, it is impossible for this Court to analyze this issue as a question of law. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider issues that are not supported by cited authority); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (recognizing that where an argument is unclear and not explained, this Court will not guess or surmise in order to review such an undeveloped argument). As a result and based upon our previous analysis of the factual issues pursuant a substantial evidence standard of

review, we find no legal error made by the Board and reverse the legal conclusions made by the district court.

**CONCLUSION**

**{18}** For the foregoing reasons, we reverse the judgment of the district court and affirm the Board's decision to grant Plaintiff a "cottage industry" license.

**{19}** **IT IS SO ORDERED.**


_____

**TIMOTHY L. GARCIA, Judge**


**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**LINDA M. VANZI, Judge**